921 A.2d 292

Paul GUNBY, Jr., et al.

v.

OLDE SEVERNA PARK IMPROVEMENT
ASSOCIATION, INC., et al.

Nos. 1180, 1248, Sept. Term, 2005.

Court of Special Appeals of Maryland.

April 27, 2007.

190

192

Frederick C. Sussman (James P. Nolan, on the brief), Annapolis, MD, for Appellant.

Robert C. Douglas (Brian M. Quinn, Megan H. Baer, on the brief), Baltimore, MD, for Appellee.

Panel: DAVIS, HOLLANDER and MEREDITH, JJ.

HOLLANDER, J.

This consolidated appeal involves a dispute concerning ownership of riparian rights along the Severn River in Anne Arundel County, adjacent to land owned by Paul Gunby, Jr. and Joan Gunby, appellants. They appeal from two orders issued by the Circuit Court for Anne Arundel County in separate but related cases. The appellees are the Olde Severna Park Improvement Association, Inc. (the "Association" or "OSPIA") and six residents of the Olde Severna Park Community.[1]

First, on September 2, 2004, appellees filed a "Petition for Judicial Review" in the Circuit Court for Anne Arundel County (Case No. C–04–100243), challenging the issuance on July 16, 2004 of Tidal Wetlands License 04–PR–0642 (the "License") to Mr. Gunby by the Maryland Department of the Environment ("MDE"). The License authorized appellants to construct a 410–foot walkway across a tidal pond, as well as a 200 foot pier into the Severn River. Appellees asserted, *inter alia,* that appellants do not own the riparian rights to the waterfront property adjoining their residence, from which appellants sought to build the pier and walkway. Instead, appellees claimed that the Association possessed the riparian rights, and therefore MDE erred in issuing the License.

Second, on February 25, 2005, appellees filed a "Complaint for Declaratory Judgment" in the circuit court (Case No. C–

---

1. The individual appellees are Roy Higgs, Marilyn Higgs, James R. Dell, Scott Ramsey, Dr. Earle Dashiell, and Anne Dashiell. The Maryland Department of the Environment is an interested party, and has submitted an amicus curiae brief.

05–104092).[2] There, they sought to obtain a judicial declaration that the Association, not appellants, owned the riparian rights in issue.[3]

Both sides filed cross motions for summary judgment, supported by numerous affidavits and exhibits. After a hearing on May 23, 2005, the circuit court found that appellees own the riparian rights in dispute. Therefore, the court awarded summary judgment to appellees, as reflected in an "Opinion as to Declaratory Judgment" dated June 3, 2005 (filed June 30, 2005) and an accompanying "Order."

Thereafter, on June 6, 2005, the court held a hearing in the judicial review proceeding. Although MDE was a party to the proceedings involving judicial review of the issuance of the License, it took no position on ownership of the riparian rights. The court took judicial notice of its decision in the declaratory judgment proceeding and, on June 29, 2005 it filed an "Opinion as to Petition for Judicial Review," along with an "Order As to Petition for Judicial Review." Having found that appellants did not own the riparian rights, the court determined that appellants were not entitled to the License.

Appellants timely noted separate appeals. By Order dated November 15, 2005, this Court granted appellants' motion to consolidate the appeals "for purposes of briefing and argument." [4]

Appellants pose three questions:

I. Did the Circuit Court err when it determined that Rossee did not acquire riparian rights from The Severna Company in 1963, and that the Gunbys subsequently did not acquire those rights through mesne conveyances?

---

2. Although the judicial review case was filed first, the court first resolved the declaratory case.

3. MDE was not a party to the litigation involving ownership of the riparian rights.

4. The judicial review action concerning issuance of the License is Appeal No. 1180. The declaratory judgment action is Appeal No. 1248.

II. If interpretation of the 1963 Deed to Christian Rossee required resolution of conflicting permissible inferences or reasonable interpretations as to whether that Deed was intended to convey riparian rights to Rossee, did the Circuit Court err in deciding the ownership of riparian rights on summary judgment?

III. Should the Circuit Court's decision that reversed the issuance of the Tidal Wetlands License be reversed and remanded for further proceedings?

MDE has submitted an amicus curiae brief, claiming it "wishes to monitor this appeal to ensure that the Court renders its decision cognizant of its potential regulatory ramifications." It asks this Court to resolve the dispute without "inadvertently impair[ing] the Department's ability to issue tidal wetlands licenses, such as the one that triggered the present litigation."

For the reasons set forth below, we shall vacate and remand.[5]

## FACTUAL SUMMARY[6]

Appellants are owners in fee simple of property in Severna Park. It is formed by two parcels. One is a waterfront parcel of about .70 acres, adjacent to the Severn River, a navigable waterway. The second parcel is adjoining and land-locked.

---

5. Our opinion was filed on March 1, 2007. By "Motion To Modify Disposition Of Appeals," Dann and Janet Thomasson, "substituted parties as successors in title" to Paul Gunby, Jr. and Joan Gunby, have asked us to revise our mandate to clarify our disposition as to each appeal. They explain that the appeals were consolidated only for briefing and argument, not disposition, and therefore separate mandates are appropriate. We agree. At their suggestion, we shall also make a minor factual revision concerning the date on which the circuit court ruled on the matter of the License. Accordingly, we shall grant the "motion to modify."

6. The underlying facts are largely undisputed, and are gleaned primarily from the affidavits and exhibits that were submitted in connection with the cross motions for summary judgment.

Collectively, the two parcels are referred to as 216 Old County Road (the "Property").[7]

Appellants reside in the Olde Severna Park subdivision, which borders the Severn River. The individual appellees are also property owners in the subdivision. Alison Burbage, President of OSPIA, averred in an affidavit submitted below that the community consists of approximately 270 acres, with about 400 homes. She explained: "The largest part of the community wraps along an area of the river known as Sullivan's Cove." Further, she averred that "[t]he tidal area in front of 216 Old County Road [i.e., appellants' Property] is known as Sullivan's Cove Marsh."[8]

According to Burbage, the Association is a community group of about 270 members who pay dues. It was formed in 1918 to "enhance and preserve the ... natural characteristics of the community." OSPIA maintains a small marina at the mouth of Sullivan's Cove for the benefit of the community. The marina houses a pier, which residents are able to access. Beyond this is a community mooring, used by residents to tie up their boats to individual moorings. Smaller craft are used to reach the pier area.

On November 3, 2003, Mr. Gunby filed with MDE a "Joint Federal/State Application for the Alteration of any Tidal Wetland in Maryland," dated October 27, 2003. He sought per-

---

**7.** By Lot Consolidation Agreement dated March 1, 2001, between the Gunbys and Anne Arundel County, the Gunbys consolidated for zoning and development purposes the two parcels of land that comprise 216 Old County Road.

**8.** According to Burbage, Sullivan's Cove Marsh "is home to a large tidal and non-tidal wetlands marsh...." Quoting *Gems of the Severn,* published in 1996 by the Severn River Land Trust, she stated that Sullivan's Cove is

"one of the most significant waterfowl habitats in the entire Severn River watershed ... Numerous species of waterfowl frequent this area ... Sullivan's Cove is also a very important spawning ground and habitat for fish ... As a breeding ground for fish and birds, Sullivan's Cove has a far-reaching beneficial impact on the entire Severn River estuary. It is especially important considering the rare occurrence of such marsh areas in the estuary."

mission to construct a 410 foot walkway "overtop [a] non-navigable tidal pond and uplands area [and] a 6′ × 200′ pier which includes a 10′ × 20′ platform, a 3′ × 20′ finger pier, a boatlift and 2 mooring piles."[9] While MDE was processing appellants' application, the Association informed MDE that it claimed ownership of the riparian rights to the Severn River shoreline adjacent to appellants' land.

Thereafter, MDE notified appellants of the Association's objection and advised that it was placing the matter on hold, pending resolution of the dispute concerning riparian rights. About three months later, appellants' attorney submitted to MDE an opinion letter authored by James Nolan, Esquire, analyzing the riparian rights issue, and concluding that appellants owned the riparian rights. The letter stated, in part:

1. In the early 1900's the developer of Severna Park, the Severna Company, purchased the land including the waterfront parcel in front of the Gunbys' property.

2. The Severna Company reserved the riparian rights of the waterfront until 1963 at which time a 20–acre parcel (+/-) was sold to Christian Rossee, which included the riparian rights to the Gunby parcel. There was no reservation of those riparian rights by the Severna Company in that sale[.]

3. In 1972 Mr. Rossee sold to John Jones the specific parcel in front of the Gunby home. There was no reservation of the riparian rights in that sale.

4. In 1991 the Gunbys purchased the property from the Joneses. Again, there was no reservation of riparian rights.

As indicated, MDE issued the License to Mr. Gunby on July 16, 2004. The License authorized him *"[t]o construct a 410–foot long by 3–foot wide walkway over marsh and shallow water, and a 200–foot long by 6–foot wide pier with a 20–foot long by 10–foot wide platform, and a 20–foot long by 3–foot*

---

**9.** In one place on the application, it appears that the size of the walkway was transposed to 140 feet, but the parties agree that the walkway was to be 410 feet.

*wide catwalk over open water as depicted on modified plans dated July 15, 2004."* (Italics in original).

Because we must determine whether riparian rights were severed from appellants' Property, the history of the ownership of the Gunby Property and the surrounding properties is central here. Therefore, we pause to review the evidence as to these matters, focusing primarily on the chain of title for the waterfront area of the Gunby Property, identified on a 1931 Plat as Block J. That parcel, along with the adjoining parcel, were, at one time, part of a larger tract surrounding Sullivan's Cove, known as the Jacob Mittnacht tract.

By deed dated April 25, 1912, Jacob Mittnacht conveyed approximately 97 acres in Severna Park to Oscar Hatton, President of the Severna Company. Two days later, Hatton deeded the land to the Severn Realty Company of Baltimore City, which mortgaged the property. Through foreclosure, the Severn River Land Company acquired title to the 97 acres, by deed dated March 15, 1916. Then, by Deed dated May 1, 1916, the Severna Company acquired the 97 acres, including the Property in issue, from the Severn River Land Company. Thus, at that point the Severna Company owned all of the land surrounding Sullivan's Cove, known as the "Jacob Mittnacht Tract" (the "Mittnacht Tract"), including Block J.

By deed dated February 24, 1917, the Severna Company conveyed a landlocked parcel of the Mittnacht Tract to Henry D. Koethe and his wife, Emma. Then, on December 20, 1929, the Company conveyed to Mr. Koethe's widow, Emma, by deed (the "2nd Koethe Deed"), the rights and use of the streets, roads, and land designated as "Public Park" on the Severna Park Plat of 1910. The 2nd Koethe Deed provides, in part:

> [I]t being the purpose and intention of the said The Severna Company to give to the owners and occupants of lots in Severna [P]ark reciprocal rights in the streets, roads,

*and waterfront* hereafter to be laid out on and through a plat or subdivision of the said "Mitnacht" [sic] tract.

(Emphasis added.)

The Severna Company subdivided the Mittnacht Tract in 1931. The 1931 Plat, which was recorded, is labeled "Plat No. 2 (Jacob Mittnacht Tract)" (hereinafter, the "1931 Plat"), and shows several parcels owned at that time by the Company, including Block J. At issue here is the handwritten Note on the upper left-hand corner of the 1931 Plat, which states:

> It is the intention of the Severna Company not to dedicate to the public, the streets, alleys, roads, drives, and other passage ways and parks shown on this plat, except that the same may be used in common by lot owners and residents of Severna Park Plat 2. *All riparian rights being retained by the said the Severna Company.*

(Emphasis added).

In a deed dated April 20, 1963 (the "Rossee Deed"), the Severna Company conveyed to Christian Rossee, in fee simple, several parcels of land, including Block J. Parcel III consisted of 7. 91 acres and included "all of Park Road, [a]ll of the park and all of Block J, Plat 2, Severna Park." Further, the Rossee Deed described all three parcels as "being all that remains unsold of Plat 2, Severna Park, which is part of the conveyance from the Severn River Land Company to the Severna Company by deed dated May 1, 1916 and recorded among the Land Records of Anne Arundel County. . . ." Notably, the Rossee Deed stated, in part:

> TOGETHER with the right to use in common with the seller and others, all of the streets, roads, parks, and avenues *as shown on Plat # 2, Severna Park, Jacob Mittnacht Tract,* surveyed by J. Revell Carr, April, 1931, recorded among the Plat Records of Anne Arundel County . . . .
>
> TO HAVE AND TO HOLD the said parcels of ground above described and mentioned and hereby intended to be conveyed together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said CHRISTIAN E.

ROSSEE, his executor, administrators, heirs and assigns, in fee simple.

AND the party of the first part hereby warrants that it has not done or suffered to be done, any act, matter or thing whatsoever to encumber the property hereby conveyed and will warrant specially the property hereby granted and that it will execute such further assurances of the same as may be requisite, but *nothing herein granted is to apply to restrictions, dedications, easements or ways.*

(Emphasis added.)

The Rossee Deed refers repeatedly to land along "the waters edge of the Severn River." However, it does not specifically mention "riparian rights," nor does it expressly grant rights to the "water" or the "river." [10]

In 1972, Rossee conveyed his waterfront parcel, consisting of ".70 acres, more or less," to John M. Jones, Jr. and Carol J. Jones, his wife. That deed stated, in part:

**Together** with the buildings and improvements thereupon erected, made or being and all and every the [sic] rights, alleys, ways, waters, privileges, appurtenances and advantages, to the same belonging, or anywise appertaining.

**To Have and To Hold** the said lot of ground and premises above described and mentioned, and hereby intended to be conveyed; together with the rights, privileges, appurtenances and advances thereto belonging or appertaining unto the proper use and benefit of the said JOHN M. JONES, JR. and CAROL R. JONES, his wife, as tenants by the entireties, their assigns, the survivor of them, the survivor's heirs and assigns in fee simple.

By deed dated February 27, 1991, appellants purchased the waterfront parcel and the landlocked parcel from Mr. and Mrs. Jones. The deed contains a description of the property and refers to the "Rossee Deed" as the original link in the

---

**10.** Appellees refer us to a "covenants" paragraph in the Rossee Deed, with a citation of "Id.," which, in turn, was a citation to E. 130 to 138. We see no such paragraph in the Deed.

chain of title from the Severna Company. The landlocked parcel is described in the deed as being "the same lot of ground which by Deed dated April 20, 1971 and recorded among the Land Records of Anne Arundel County, Maryland . . . was granted and conveyed from Sue P. Rife, widow, to John M. Jones, Jr. and Carol Robert Jones, his wife." The other parcel is the .70 acre waterfront parcel, described as being "the same parcel of land which by Deed dated January 17, 1972 and recorded among the Land Records of Anne Arundel County . . . was granted and conveyed from Christian E. Rossee unto John M. Jones and Carol R. Jones, his wife." Further, the deed stated:

TO HAVE AND TO HOLD the said described lot of ground and promises, above described and mentioned, and hereby intended to be conveyed; together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said parties of the second part, as Tenants by the Entireties and not as Tenants in Common, their personal representatives and assigns, in fee simple.

In the meantime, by a "Quit Claim Deed" dated May 17, 1977, the Company transferred all of its remaining property rights to the Association. That deed stated, in part:

WHEREAS, The Severna Company now desires to convey the hereinafter described property *and riparian rights* thereto to the Anne Arundel County Planning And Zoning Officer, in trust, to be immediately conveyed to the Olde Severna Park Improvement Association, Inc., the community association representing the lot owners of Severna Park.

(Emphasis added.)

Then, on October 28, 1991, the Severna Company conveyed to the Association "any property interest remaining in the Severna Company, Inc. on the herein described four plats that was not previously conveyed to the Grantee or to any third party." Thus, the two transfers conveyed all remaining property interests from the Severna Company to the Association.

The term "riparian rights" does not appear in the 1991 deed, however.

With this background in mind, we return to the legal proceedings.

On August 27, 2005, appellees filed a Petition for Judicial Review (Case No. C–04–100243) in the circuit court, challenging the issuance of the License. They asserted:

> MDE should not have issued the License to Gunby for two reasons. First, the Association (not Gunby) owns the riparian rights to the property over which Gunby intends to construct the Bridge/Pier. Only the owner of the affected riparian rights is entitled to obtain a license to construct a pier and Association opposes the License. Second (and regardless of whether Gunby owns the appropriate riparian rights), the MDE impermissibly granted the License, contrary to applicable statutory and regulatory guidelines: (1) the MDE failed to limit the size of the Bridge/Pier so that it extends only as far as necessary into the nearest navigable waters immediately adjacent to the Gunby property; (2) Gunby did not provide the requisite details called for by the license guidelines, thereby obscuring the true impact the Bridge/Pier will have on the surrounding environment; and (3) the MDE, in turn, failed to follow state and federal procedures for reviewing a joint permit application, including a failure to notify the Army Corp of Engineers of the application and obtain the necessary federal approval.[11]

In an Order dated September 3, 2004, the court granted a temporary restraining order. On the same day, it filed a "Consent Order," barring construction until resolution of the Petition.

Mr. Gunby responded to the Petition, claiming, *inter alia,* that the 1931 Plat did not sever riparian rights from the Mittnacht Tract. As to the Note on the 1931 Plat, Gunby stated:

---

11. The technical contentions are not at issue here.

The Note stated unambiguously that its purpose was three-fold:

1. To make clear that the plat did not constitute a dedication of streets, alleys, roads, drives or other passage ways or parks to the public;

2. To grant to the lot owners and residents of land on the Mittnacht Tract a right of use in common of these streets, alleys, roads, drives or other passage ways and parks as shown on the plat; and

3. To retain for itself riparian righs.[ ]

Appellant also asserted:

Thus, as of the recording of the Mittnacht Plat in 1931, The Severna Company owned the underlying fee simple interest in the Mittnacht Tract, and owned and controlled all of the riparian rights appurtenant to the ownership of the Mittnacht Tract. The Note on the Mittnacht Plat in no way constrained or prohibited The Severna Company from conveying the Mittnacht Tract, or any portion of the Mittnacht Tract, and its associated appurtenant rights. The only limitation on the rights of The Severna Company to dispose of land in the Mittnacht Tract is that any such disposition would be subject to the rights of owners and residents of land shown on the Mittnacht Plat to use in common the streets, roads, alleys, drives, ways and parks shown on the Plat.[ ]

Further, Gunby added:

[A] reasonable construction of the Note is that The Severna Company was retaining those riparian rights associated with the streets, alleys, roads, drives or other passage ways and parks since some of those ran to or abutted the water. This construction would make it clear that the right of use in common to the waterfront park or any streets, roads or ways that had their terminus at the water did not include the right to exercise any rights of riparian ownership.

In addition, Gunby claimed that he acquired the Property "from Jones, directly in the chain of title from Rossee." He

explained: "The conveyance of the Gunby property from Rossee to Jones and from Jones to Gunby were full fee simple grants and conveyances of the land that Rossee received from The Severna Company, including riparian rights."

On February 25, 2005, appellees instituted a "Complaint for Declaratory Judgment" (Case No. C–05–104092), to obtain a resolution of the riparian rights issue.[12] In an Order dated March 10, 2005, the circuit court granted appellees' motion to stay the administrative appeal "pending full judicial adjudication" of the riparian rights issue in the declaratory action.

Gunby moved for summary judgment in the declaratory case on April 1, 2005. His motion was supported by the affidavit of Edward J. Albert, Esquire, and numerous exhibits.[13] Albert's affidavit traced the Severna Company's ownership and disposition of property, including Block J. Because much of that history is included in our factual summary, we need not repeat it in its entirety. The affidavit stated, in part:

1. I am an attorney at law. I was admitted to practice law in the State of Maryland in 1959, and have engaged in the practice of law in Anne Arundel County.

2. For more than 40 years the predominant part of my practice of law has been devoted to the abstracting, examining and rendering of opinions regarding titles to land, primarily in Anne Arundel County. I am familiar with the process for abstracting and examining titles to land in Anne Arundel County. By my best estimate, during my career I have abstracted, examined and/or rendered opinions as to more than twenty-five thousand (25,000) titles to waterfront and non-waterfront land in Anne Arundel County.

3. I have qualified and testified as an expert witness on approximately 50 occasions regarding my examination

---

12. Appellees subsequently amended their suit to add Mrs. Gunby as a defendant. Therefore, we refer to the Gunbys as appellants, although some pleadings were filed solely by or against Mr. Gunby.

13. At the motion hearing, Gunby orally amended his motion to add his wife as an additional movant.

and/or opinions as to the title to and ownership of waterfront and non-waterfront land. My testimony in most of these cases has been before the Circuit Court for Anne Arundel County.

4. I have conducted a thorough search of the Land Records of Anne Arundel County in accordance with recognized and accepted title abstracting practices to determine the current ownership of the Gunby waterfront property, and its associated riparian rights, at 216 Old County Road, Severna Park, Maryland. . . .

5. For purposes of establishing the chains of title [to the two parcels of land,] I began with a Deed dated April 25, 1912, recorded among the Land Records of Anne Arundel County in Liber GW 91, Folio 124, a certified copy of which is attached to this Affidavit as Exhibit No. 3. By this Deed, Jacob A. Mittnacht, *et al.*, Grantors, conveyed to Oscar L. Hatton, Grantee, in fee simple, approximately 97 acres of land, more or less, in Severna Park, Maryland.

\* \* \*

9. Each of the instruments [i.e., deeds discussed earlier] referred to in Paragraphs 5 through 8 contain the same metes and bounds description of the 97 acres, more or less, parcel of land, including the calls along the water line of the Severn River. Some of these instruments include the description by express incorporation by reference.

10. By Deed dated April 20, 1963 . . . a certified copy of which is attached to this Affidavit as Exhibit No. 8, The Severna Company granted and conveyed unto Christian E. Rossee, in fee simple, three parcels of land. The Parcel relevant to these proceedings is described in the Deed as "PARCEL III". Parcel III in its entirety consists of 7.91 acres, being "all of Park Road, all of the park and all of Block J, Plat 2, Severna Park." The Deed describes this land as running seven courses along the shoreline of the Severn River for a total distance of 862.65 feet. The Deed further describes all three parcels conveyed by this Deed as "being all that remains unsold of Plat 2, Severna Park,

which is part of the conveyance from the Severn River Land Company to the Severna Company by deed dated May 1, 1916 and recorded among the Land Records of Anne Arundel County in Liber G.W. 128 Folio 426". A certified copy of Plat No. 2, Severna Park, the Jacob Mittnacht Tract ("Mittnacht Plat"), which is recorded among the Plat Records of said County in Plat Book 8, folio 1, is attached to this Affidavit as Exhibit No. 9. It was recorded among said Land Records in 1931. The *Habendum* clause of the April 20, 1963 Deed to Rossee Deed states "TO HAVE AND TO HOLD the said parcels of ground above described and mentioned and hereby intended to be conveyed together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said CHRISTIAN E. ROSSEE, his executor, administrator, heirs and assigns, in fee simple."

11. By Deed dated January 17, 1972 ... Christian E. Rossee conveyed .70 acres of land, more or less, to John M. Jones, Jr. and Carol R. Jones, his wife. A certified copy of this Deed is attached to this Affidavit as Exhibit No. 10. This .70 acre, more or less, parcel, conveyed in fee simple, is a portion of the property acquired by Christian E. Rossee by Deed recorded in Liber LNP 1649, Folio 276, being a portion of Parcel III in that Deed. The .70 acre, more or less, parcel is a waterfront parcel, and is described as running two courses and distances along the Severn River for a total distance of 128.97 feet. The *Habendum* clause of this January 17, 1972 Deed from Rossee to Jones states "TO HAVE AND TO HOLD the said lot of ground and premises above described and mentioned, and hereby intended to be conveyed; together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said JOHN M. JONES. JR. and CAROL R. JONES, his wife, as tenants by the entireties, their assigns, the survivor of them, the survivor's heirs and assigns, in fee simple."

12. By Deed dated February 27, 1991 ... a certified copy of which is attached to this Affidavit as Exhibit No. 11,

John M. Jones, Jr., and Carol Roberts Jones a/k/a Carol R. Jones, his wife, conveyed to Paul B. Gunby, Jr. and Joan Gunby, as tenants by the entireties, in fee simple, two contiguous and adjoining parcels of land that, collectively with the improvements thereof, are identified in the Deed as being known as 216 Old County Road. The first parcel is a non-waterfront parcel that binds on Old County Road and is described in the Deed as being "the same lot of ground which by Deed dated April 30, 1971 and recorded among the Land Records of Anne Arundel County, Maryland in Liber MSH 2403 folio 141, was granted and conveyed from Sue P. Rife, widow unto John M. Jones, Jr. and Carol Roberts Jones, his wife." [ ] The second parcel is the aforementioned a[sic] .70 acre waterfront parcel. This .70 acre waterfront parcel is contiguous to and adjoins the first parcel, runs along the shoreline of the Severn River for 128.97 feet, and is described as being "the same parcel of land which by Deed dated January 17, 1972 and recorded among the Land Records of Anne Arundel County, Maryland in Liber 2462 folio 321, was granted and conveyed from Christian E. Rossee unto John M. Jones and Carol R. Jones, his wife." The *Habendum* clause of the February 27, 1991 Deed (MMR 5286, Folio 876) from Jones to the Gunbys states "TO HAVE AND TO HOLD the said described lot of ground and premises, above described and mentioned, and hereby intended to be conveyed; together with the rights, privileges, appurtenancs and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said parties of the second part, as Tenants by the Entireties and not as Tenants in Common personal representatives and assigns, in fee simple."

13. By Lot Consolidation Agreement dated March 1, 2001 ... between the Gunbys and Anne Arundel County, ... the Gunbys consolidated for zoning and development purposes the two parcels of land that comprise 216 Old County Road....

14. Based upon my examination of the title to the real property known as 216 Old County Road, *it is my opinion*

*that fee simple title to that land and the riparian rights appurtenant to that land are vested in Paul B. Gunby, Jr. and Joan Gunby, as tenants by the entireties.* In arriving at that opinion I have considered the notation on the 1931 Mittnacht Plan (Exhibit No. 9) which states that "ALL RIPARIAN RIGHTS BEING RETAINED BY THE SAID THE SEVERNA COMPANY." Notwithstanding that notation on the 1931 Mittnacht Plat, the April 20, 1963 Deed from The Severna Company to Christian E. Rossee (Exhibit No. 8) unequivocally granted and conveyed a fee simple interest in Parcel III described in that Deed, including its 862.65 feet which call along the shoreline of the Severn River, with the right to Rossee "TO HAVE AND TO HOLD the said parcels of ground above described and mentioned and hereby intended to be conveyed together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto and to the proper use and benefit of the said CHRISTINA E. ROSSEE, his executor, administrator, heirs and assigns." My title examination did not reveal that The Severna Company had conveyed to others any of its riparian rights associated with the land described as Parcel III prior to the 1963 Deed to Rossee.

(Emphasis added).

Based upon Albert's examination of the chain of title, appellants argued that they had fee simple title to the Property, inclusive of riparian rights. Alternatively, appellants argued: "Even assuming that the riparian rights were severed by the 1931 Mittnacht Plat, a premise with which Gunby does not agree, they were reunited with the underlying fee in the April 20, 1963 Deed from The Severna Company to Christian Rossee and continued through the chain of title to the Gunbys."

In support of their position, appellants also relied, *inter alia*, on an affidavit dated May 10, 2005, provided by Debra R. Shepley, Christian Rossee's daughter. Ms. Shepley averred that, shortly after Mr. Rossee purchased Block J in 1963, "he constructed approximately four jetties from the shoreline of Block J into Sullivan's Cove in order to prevent erosion." According to Ms. Shepley, she helped to maintain those jet-

ties, without objection from the Association, until her father became ill in the 1970's. Further, she averred:

5. After my father died in July, 1980, I obtained title to the waterfront portions of Block J that he had not sold to others. Essentially, I acquired title to all of Block J that lies to the south of the property now owned by Paul and Joan Gunby and north of what now is known as Bay Parkway as shown on the Mittnacht Plat.

6. Beginning in approximately 1989 I constructed several more jetties into Sullivan's Cove in front of my property, and in front of the property then owned by John and Carol Jones with their permission. The property owned by John and Carol Jones is now owned by Paul and Joan Gunby. I have continued to maintain and enhance the jetties that I installed and that my father installed. Olde Severna Park Improvement Association has never objected to my construction or maintenance of jetties into Sullivan's Cove.

7. My father and I both installed and maintained our jetties into Sullivan's Cove because we believed, and I continue to believe, that we owned the riparian rights associated with our ownership of Block J. Until Paul Gunby attempted to obtain permission to build a walkway and pier from his property I never heard the Old Severna Park Improvement Association claim that it owns the riparian rights in front of Block J.

On April 29, 2005, appellees responded with an opposition to the motion, as well as their own motion for summary judgment. They argued:

[S]ummary judgment is appropriate on Plaintiffs' claim for a declaratory judgment that Defendant Gunby does not own the riparian rights to the subject property. [Appellees] submit that they are entitled to judgment on grounds that: (1) the original developer/owner of the subject property severed and retained the riparian rights to the property; (2) subsequent deeds in the Defendant's chain of title failed to convey the riparian rights to the subject property to the Defendant; and (3) the original developer/owner of the

subject property conveyed all riparian rights to said property to the Plaintiff Association.

In support of their motion, appellees attached several exhibits, including the affidavit of Bowen P. Weisheit, Jr., Esquire. He averred, in part:

1. ... I am an attorney at law admitted to practice in the State of Maryland.

2. As part of my practice, I abstract, examine and render opinions regarding titles to land in various locations throughout the State of Maryland.

3. I have conducted a search of the Land Records of Anne Arundel County in accordance with recognized and accepted title abstracting practices to determine whether the riparian rights associated with the property located at 216 Old County Road, Severna Park, Maryland 21146 (the "Property") were reserved/severed by the Severna Company (the original developer/owner of the parcel of land that includes the Property) through operation of a 1931 Plat of Severna Park (the "1931 Plat") and a deed dated April 20, 1963 from the Severna Company to Christian Rossee (the "Rossee Deed")....

4. The 1931 Plat is in the chain of title to the Property (currently owned by Paul B. Gunby, Jr. and Joan Gunby).

5. The Severna Company reserved the riparian rights to the Property unto itself by reference in the 1931 Plat prior to the subsequent conveyance of the Property through the Rossee Deed.

6. Based on my review of the land records of Anne Arundel County and, in particular, the quit claim deed dated May 17, 1977 ... the Severna Company conveyed the property described therein and the riparian rights thereto to the Anne Arundel County Planning and Zoning Officer, in trust, to be immediately conveyed to the Olde Severna Park Improvement Association, Inc....

7. Based on my review of the land records of Anne Arundel County and, in particular, the quit claim deed dated May 26, 1977 ... the Anne Arundel County Planning and

Zoning Officer conveyed the property including the riparian rights described therein to the Association.

8. Based on my review of the land records of Anne Arundel County and, in particular, the quit claim deed dated October 28, 1991 ... the Severna Company conveyed the property including riparian rights described therein to the Association....

9. Based on my review of the land records of Anne Arundel County and, in particular, the confirmatory quit claim deed dated June 16, 1993 ... the Severna Company conveyed the property and riparian rights described therein to the Association....

10. Based on my review of the land records of Anne Arundel County ... the Severna Company conveyed the property—not referencing the waterfront—described therein to Henry D. Koethe and Emma L. Koethe. *See* Exhibit E.

11. Based on my review of the land records of Anne Arundel County, in a deed dated December 20, 1929 ... the Severna Company expressly conveyed the rights in the "waterfront" of the Severna Park development described therein to Henry D. Koethe, since deceased, and Emma L. Koethe. This deed is an example of the Severna company's use of specific language referencing riparian rights when it intends to convey those rights, as opposed to the general language of rights appurtenant, typically used in its deeds conveying property in Severna Park.

12. Based on my review of the land records of Anne Arundel County ... the Severna Company expressly reserved all riparian rights.

In addition, appellees submitted a copy of the 1977 Deed between the Company and the Planning and Zoning Officer of Anne Arundel County. They also included a copy of the 1991 Deed between the Company and the Association.

The circuit court heard arguments on the cross-motions on May 23, 2005. At the hearing, appellants argued:

The ultimate question for resolution by this Court today on summary judgment is whether, as a matter of law and based upon the undisputed material facts, The Severna Company's 1963 conveyance to Christian E. Rossee included the riparian rights to an 862.65 feet of waterfront that were described as part of parcel three of that 1963 conveyance.

Claiming that appellants were entitled to two rebuttable presumptions in construing the Rossee Deed, their counsel argued:

The First rebuttable presumption is found in Real Property Article, Section 2–101. And that presumption essentially states that when a deed or conveyance uses the term, grant, or the phrase, bargain and sell, or any other word purporting to transfer the whole estate of the grantor, the conveyance passes to the grantee the whole interest and estate of the grantor in the land mentioned in the deed unless a limitation or reservation shows, by implication or otherwise, a different intent. . . .

The second presumption is that a description in the deed that describes the land being conveyed as touching the water with phrases such as, along the shore, or beside a cove, or words of that import, the whole mark of riparian rights—and again presumed to convey the riparian rights to that land as part of the conveyance whether or not the words, we convey riparian rights, are expressly stated. We will see, Your Honor, that in this particular case, there is no clear and unambiguous rebuttal of these two presumptions.[14]

Appellants' counsel continued:

I would like to talk about several salient points of the Rossee deed, particularly as they relate to these presumptions. First, The Severna Company, in the deed, used language that it does "hereby grant and convey all those

---

**14.** Appellants made similar arguments in their response to the Petition for Judicial Review, discussed *supra*.

lots or parcels of land and being more fully described as follows."

So at the very outset of the conveyance of the granting clause, the statutory language in the presumption, grant and convey. There was no reservation of riparian rights in that granting clause.

We then turn to the description of Parcel Three, which is the relevant parcel of land in question. When we read that entire, very long description, we see that there are seven calls along the water's edge and shoreline of the Severn River for a total distance of 862.65 fee. Again, a call along the shoreline, along the waterfront consistent with the second statutory presumption.

When we look at the being clause of the deed, what is being granted is all of Block J, Plat 2, Severna Park. Again, all of Block J, Plat 2, Severna Park, and then being all that remains unsold of Plat 2, Severna Park. In this being clause, again, no reservation of riparian rights.

And then, we look at the habendum clause, that is [the] to have and to hold clause of the deed. And what does that say? It says that Mr. Rossee was to have and to hold the said parcels of ground above described and mentioned "together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining." As Your Honor knows, riparian rights are one of the many bundle of rights that belong or appertain to a parcel of waterfront land.

Further, appellants' counsel argued:

When we view the four corners of this 1963 deed from The Severna Company to Christian Rossee, the two presumptions confirm what is apparent from the fact[s] of that deed. It was an unrestricted grant and conveyance of Block J with its 862.65 feet of waterfront along the water's edge and the shoreline of the Severn River, including associated riparian rights.

The Plaintiff's case hinges upon what we will call the Mittnacht plat note from 1931. . . . The Severna Company's

retention of riparian rights in that plat note did not negate the conveyance of riparian rights in the Rossee deed.

Reservations in deeds are to be narrowly construed and where a deed or reservation is susceptible to more than one construction, the ambiguity is to be construed against the grantor and in favor of the grantee. Now I realize that this a note of retention on a plat, but I believe the same principle applies, particularly since Plaintiff's argument is that this plat, with everything incorporated onto it, is incorporated by reference into the Rossee deed.

\* \* \*

[T]o the extent that there is any ambiguity as to whether or not the "retention of riparian rights" or retention of riparian rights is ambiguous, then that ambiguity should be construed in favor of Mr. Rossee and not in favor of the Severna Company.

\* \* \*

I would submit to Your Honor that the retention of riparian rights by The Severna Company by virtue of that plat note was a limited retention of riparian rights associated only with the rights of use in common that were granted to the streets, alleys, roads, drives, and other passageways and parks shown on this plat, and that is language from the plat. It was not a retention of riparian rights to all waterfront shown on the plat.

We have to understand what a retention is, Your Honor. A retention is a holding back or a reservation from an affirmative grant. So there has to be a grant of a property interest before a lesser property interest or a component property interest may be retained.

Appellees countered:

[Appellants' counsel] was correct in that there is no dispute as to material fact concerning the documents. What there is a dispute, obviously, is as to what was the intent on

the note on the 1931 plat and what is the relevance of that 1931 plat to the deed held by the Gunbys.

* * *

[Appellants' counsel] failed to mention that when the Kuethe [sic] deed discussed what was transferred, he said, et cetera. The et cetera he left out was waterfront. What the developer said in 1929, just two years before the 1931 plat was addressed, it said in the third paragraph of the Kuethe [sic] deed, it being the purpose and intention—intention—of the said The Severna Company to give the owners and occupants of lots in Severna Park reciprocal rights in the streets, roads and waterfront—waterfront—hereinafter to be laid out—hereinafter to be laid out—and through a plat or subdivision of the said Mittnacht tract.

Your Honor, two years later, they executed their intent. They drew up the Mittnacht plat. And on that Mittnacht plat, as a developer of a subdivision, what they did was they identified at a time before subdivisions were actually being built in a lot of places. . . .

*They realized that there are common assets that a community can share.* And they had the foresight nearly 75 years ago to recognize that the common assets included parks, it included the roads and the alleys, *and it included the waterfront.*

*It included the riparian rights because they recognized that if they could control the development of the waterfront, they then were able to assure an asset, which to this day, as of today, is the only undeveloped cove on the Severn River.* It is one of the gems of the Severn River that have been noted. And it is because this developer had the foresight to recognize the value as a common asset of an undeveloped waterfront area to maintain, to maintain that area.

*For their reservation to be effective, there are two requirements under the law. The first requirement is that the reservation need be expressed. All rights retained. I don't know how much more expressive and concise and*

*clear you can be when you say all rights retained by The Severna Company.*

*The second is you have to have notice. The notice is provided in the plat which is actually referred to in the Rossee deed. And most significant .. is that the Rossee deed has a reservation. The Rossee deed has a reservation in it which puts them on alert that there may be restrictions in the deed....*

(Emphasis added).

Appellees' counsel continued:

The Rossee deed states in the second-to-the-last paragraph of the deed, it says ... nothing herein granted is to apply to restrictions, dedications, easements, or ways. Nothing herein granted. That was a warning that there may be restrictions. There is an explicit reference to the 1931 plat, putting Mr. Rossee and all subsequent titleholders in the chain that there may be restrictions on this property.

And upon reading the plat in the note which was the original subdivision plan for this community, its states that all riparian rights are retained. The word retained—the verb retained is not by accident. The Maryland Court of Appeals, quoting Professor Tiffany, has stated that "When riparian rights are severed, this he"—meaning the property owner—"this he may do either by a transfer of the land"—retaining the right or a transfer of the right remaining in the land. Retaining is the operative verb, the legal word which is used if you are severing the riparian rights.

What this Company did in 1931 in basically executing what they promised in 1929 in the Kuethe [sic] deed they would do is they severed those riparian rights from all property laid out in that subdivision plat.... It was not just the outline of the park, the roads and other items. It was a plan for the community and as such, the verbage [sic] in the note applies to all of the land which is detailed or platted on this plat.

(Emphasis added).

In an oral ruling, the court stated:

The part of the question as to which there is a need for declaratory judgment is the deed in the Anne Arundel County Land Records, Book 1649, Page 276, and subsequent pages between The Severna Company and Christian Rossee. And counsel rightly have focused on the eighth page of that deed, the key language being: "Together with the right to use in common with the seller and others all of the streets, roads, parks and avenues shown on Plat No. 2, Severna Park Jacob Mittnacht tract surveyed by J. Rebel Carr April 1931" and references to the recording as well as it concludes that paragraph, "As well as all privileges, appurtenances and advantages to the same belonging or anywise appertaining."

There also is a dispute as to the last two lines of the paragraph which follows that two paragraphs later, the same page, "But nothing herein granted is to apply to restrictions, dedications, easements or ways as to the warranty that the grantor would give to the grantee."

The Court recognizes that when a document such as the Jacob Mittnacht plat is referred to in a deed, under our case law such as *Williams v. Skyline Development Corp.*, 265 Md. 130, 288 A.2d 333 (1972), the effect of that is that it incorporates the document. And when the document is incorporated, ordinarily that would incorporate the entirety of the document, not just selected parts, unless there is something to indicate the contrary.

The basic rule from the Court of Appeals that we have in interpreting deeds is that we try to interpret the entire deed as a contract and every bit of language in the deed, not throwing any parts out unless there is something which is a violation of law that in effect shouldn't be permitted as a matter of public policy to be in a deed.

Here, the disputed phrases—the first one includes the reference to the Mittnacht plat and the second one includes reference to restrictions, dedications, easements or ways. Looking at the Mittnacht plat, the argument is made by [counsel for appellants] that that plat, although it would be incorporated, is ambiguous. Or actually, [his] argument is

that it is not ambiguous, that it should be construed as referencing when it refers to riparian rights only riparian rights that would attach to the ends of the streets, alleys, roads, drives and other passageways and parks that are shown on the plat. That sentence concludes with a period and then the next sentence is, all riparian rights being retained by the said The Severna Company.

I would note that [appellants' counsel] doesn't dispute that this is not a subdivision plat which is solely for the purpose of designating the streets, roads, alley and parks, but is actually the subdivision plat. So that I think that that in itself—the fact that it is the overall subdivision plat does not lead the Court to think that the second part of the note refers only to streets, alleys, roads, and parks.

And beyond that, I would note that two reasonable people, attorneys for the opposing parties, reached opposite conclusions as to whether the second sentence in that note is one that is a different topic or whether it is one which is clear. So to me, if two learned and responsible attorneys reached opposite conclusions, that in and of itself may mean that it is ambiguous.

If it is ambiguous, then the Court is permitted to consider extrinsic evidence as to its intent. . . . The most pertinent of those . . . is the 1929 deed from The Severna Company to the Kuethes [sic]. . . . That one expressly reciting in its third paragraph, "It is the purpose and intention of The Severna Company to give to the owners and occupants of the lots in Severna Park reciprocal rights in the streets, roads, and waterfront hereafter to be laid out on and through a plat or subdivision of the Mittnacht tract." That to me, explicitly says that the waterfront rights are to be reciprocal to all of the owners of lots in the platted area.

So to me, that eliminates the ambiguity and makes clear that the riparian rights that are referenced in the 1931 plat are relating to the entire platted property and not just to those which would be streets ends or adjoining the park. That if there still were ambiguity, I think also is confirmed

by the subsequent deeds, particularly the—I think it is the quit-claim deed of—is it 1971 or is it the later one?

By the subsequent quit-claim deed, which purports to convey out the riparian rights, while if there had not been a severance of those rights before, obviously that quit-claim would be an anullity [sic]. I think that it still is permissible for the Court to consider as to the intent and understanding of the grantor in the prior deeds. It also, I think, gives a sense to the last line in the disputed paragraph, "but nothing herein is to apply to restrictions, dedications, easements or ways," in perceiving that the restriction of the riparian rights to all the owners in common of the platted properties in Severna Park, old Severna Park, that is such a restriction.

\* \* \*

I find by a preponderance of the evidence that the evidence is clear enough to me that it was the intent of The Severna Company to reserve the riparian rights in the entire platted area for reciprocal use of the owners.

And so the Court will deny the motion for summary judgment by the Gunbys and grant the motion for summary judgment by the Plaintiff.

Thereafter, the court memorialized its oral ruling in an "Opinion as to Declaratory Judgment," dated June 3, 2005. In sum, it concluded that "it was the intent of the Severna Company to reserve the riparian rights in the entire platted area for reciprocal use of the others and that it was not the intent of the Rossee deed to convey any of such rights away in fee simple."

In reaching its conclusion, the trial court found that the Severna Company expressly noted the reservation of riparian rights on the 1931 Plat, and determined that the Rossee Deed did not convey riparian rights. Citing *Williams v. Skyline*, 265 Md. 130, 288 A.2d 333 (1972), the court also recognized that, under Maryland law, a plat is incorporated into a deed if the deed contains a reference to that plat. It looked to page

eight of the Rossee Deed, which included the following language:

> **Together with the right to use in common with the seller and others, all of the streets, roads, parks, and avenues shown on plat # 2, Severna Park, Jacob Mittnacht Tract, surveyed by J. Revell Carr, April, 1931,** ... as well as all privileges, appurtenances, and advantages to the same belonging or any wise appertaining[.]
>
> To have and to hold the said parcels of ground above described and mentioned ... together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining unto ... Christian Rossee, his executor, administrator, heirs and assigns, in fee simple.
>
> And the party of the first party hereby warrants that it has not done or suffered to be done any act ... to encumber the property ... and will warrant specially the property ..., but **nothing herein granted is to apply to restrictions, dedications, easements or ways. [Emphasis added.]**

Further, the court observed that the Maryland "rule for interpreting deeds is that we must interpret the entire deed as a contract and every bit of language in the deed, not disregarding any part, unless it violates some principle of law." It reasoned:

> Gunby's counsel did not contend that this is a subdivision plat solely for the purpose of designating the streets, roads, alleys and parks; rather, he agreed that it is [a] subdivision plat which created lots and, thus, established rights for future lot owners. Thus, the Court does *not* find that the second sentence of the note [in the 1931 Plat] as to riparian rights, refers only to streets, alleys, roads and, parks.

In addition, the court found the 1931 plat to be ambiguous, because the opposing attorneys construed the Note differently. To ascertain the intent of the grantor, the court determined that it could consider extrinsic evidence, such as "another deed executed by the grantor." It then looked to the 1929 Deed from the Company to Emma Koethe (i.e., the 2nd Koethe Deed), as "the most pertinent other deed...." In the

court's view, it contained a more expansive statement by the Company of its purposes and intentions, which the court quoted:

"[It is] the purpose and intention of the Severna Company to give to the owners and occupants of lots in Severna Park reciprocal rights in the streets, roads and, waterfront hereafter to be laid out on and through plat or subdivision of the 'Mittnacht' tract."

The court reasoned:

This clearly shows the grantor's intent that the plat would make the waterfront rights reciprocal to all of the owners of lots in the plated lots. This eliminates any ambiguity and makes clear that the riparian rights, referenced in the 1931 plat, related to the entire platted property and not just to those which would be street ends or adjoining parks.

The court concluded:

[B]y preponderance of the evidence, this Court finds that the evidence is clear enough that it was the intent of the Severna Company to reserve the riparian rights in the entire platted area for reciprocal use of the others and that it was not the intent in the Rossee deed to convey any of such rights away in fee simple.

In an Order dated June 3, 2005, the court stated:

1. That the Plaintiff's Motion for Summary Judgment is GRANTED;

2. That the Defendant's Motion for Summary Judgment is DENIED;

3. That summary judgment Plaintiffs and against Defendant in Plaintiffs' Complaint for Declaratory Judgment;

4. That the original owner/developer of . . . 216 Old County Road, Severna Park, Maryland 21146 severed and retained the riparian rights to said property;

5. That Plaintiffs are entitled to a Declaration that the Defendant does not own/control the riparian rights to the property located at 216 Old County Road, Severna Park, Maryland 21146, which declaration is contained in the fore-

going Opinion, which is attached & incorporated herein by reference.[15]

On June 6, 2005, the court heard argument on the "Petition for Judicial Review," in which appellees challenged the issuance of the License. Appellees argued that, because appellants lacked "the prerequisite and necessary riparian rights," the License was "improperly issued" and should be "revoked." Appellants countered that "MDE has certainly acted properly in its evaluation and approval of the tidal wetlands license."

The court took judicial notice of its decision in the declaratory proceeding, in which it determined that appellants did not own the riparian rights. In an "Opinion as to Petition for Judicial Review," filed June 29, 2005, the court concluded that because appellants did not possess riparian rights, Mr. Gunby was not entitled to a License to construct a bridge or pier. As such, the trial court reversed MDE's decision. The opinion stated, in part:

> As discussed in the attached decision in the related litigation, this court has determined as a matter of law that the Gunbys did not own the riparian rights which attach either to the tidal spit or to the shoreline of the Severn River. Accordingly, they lacked the qualifications properly to apply for a license to erect a walkway and pier. For this reason, the court will reverse the decision of the MDE to issue the license.

In the petition for judicial review, appellees had raised several procedural and substantive issues. However, the trial court declined to address these issues, concluding that they were moot in light of its ruling that appellants lacked riparian rights.

Also on June 29, 2005, the court filed an "Order as to Petition for Judicial Review," which stated, in part:

1. That the Petition for Judicial Review hereby is granted and the decision of the Maryland Department of Environ-

---

**15.** On June 28, 2005, the court denied the motion to alter or amend filed by appellants on June 7, 2005.

ment to issue a license for construction of a walkway and pier to the Gunbys hereby is reversed. . . .

## DISCUSSION

### I

Appellants complain that the circuit court erroneously concluded that the Company " 'severed and retained the riparian rights to [the Gunby] property,' " and thus appellants do not own the riparian rights. Recognizing that the "interpretation of the Rossee Deed is fundamental to a determination of whether the Severna Company conveyed riparian rights to Parcel J to Rossee in 1963," appellants contend that the court erred by determining that the Severna Company's grant of Parcel J to Rossee in 1963 was "limited by the retention of riparian rights in the Note"; in failing to find that Rossee "did not acquire riparian rights from the Severna Company in 1963"; and in ruling that appellants "did not acquire those rights through mesne conveyances."

Looking to the repeated references in the Rossee Deed to "the waters edge of the Severn River," appellants maintain the "Rossee Deed expressed an intent to convey riparian rights." They posit: "[A] description in a deed that describes the land being conveyed as touching the water, such as 'along the shore' or 'beside a cove' is 'the hallmark of riparian rights.' "(Citations omitted.) They add:

On its face, the Rossee Deed was an unequivocal grant from The Severna Company to Rossee of *all* right, title and interest that The Severna Company had in Block J, including, *without reservation,* the rights, privileges, appurtenances and advantages belonging or appertaining to Block J, *including riparian rights.* The Deed described the property conveyed as "on the waters edge of the Severn River", "with the waters edge of the Severn River", "continuing with the waters edge of the Severn River", and "leaving the shore line of the Severn River". This descrip-

tion was the "hallmark" of a grantor's intent to convey riparian rights.

Further, appellants maintain:

If The Severna Company had intended to continue to retain riparian rights in Block J and the rest of the land conveyed to Rossee in 1963 for the purpose of providing future community access to the entire waterfront as the Circuit Court found, it is reasonable to expect that The Severna Company would have retained a strip of fast land along the shoreline by which to provide access to the water from Block J and to exercise its, and the community's, rights of riparian ownership, including the right to make riparian improvements extending into the water from the shore. The Severna Company's retention of riparian rights to nearly 1,100 feet of shoreline [1] for future community use without having retained an effective means to access that shoreline from the land simply is illogical.

Moreover, appellants insist that "the Severna Company's retention of riparian rights on the 1931 Mittnacht Plat did not sever ownership of those riparian rights from the Mittnacht tract." Indeed, appellants insist that, "from the perspective of Rossee, the grantee, a purchase of more than 20 acres of land having nearly 1,100 feet of shoreline without riparian rights is nonsensical." They add: "There is nothing in the Rossee Deed to suggest that Rossee intended to forego the valuable rights associated with 1,100 feet of waterfront land." Appellants also argue that, "even if the Rossee Deed incorporated the Mittnacht Plat and the note by reference, any reservation of ownership of riparian rights contained on the note was inconsistent with and subordinate to the full fee simple rights granted by the [Rossee Deed] granting clause."

In appellants' view, the court "improperly expanded the purpose of the note reservation." As they see it, the Note merely "explicated" the "extent of rights of both groups of owners and occupants with respect to the Mittnacht Tract," but

did not grant or otherwise dedicate to the use of these owners and occupants, or to any other third party, any portion of the riparian rights to the Mittnacht Tract, and did not create any expectation of ownership or use of riparian rights by any third party. It only gave a right of use, in common, of certain amenities, exclusive of the riparian rights associated with those amenities.

Appellants explain:

[T]he Circuit Court drew the erroneous conclusions that this reservation of riparian rights by The Severna Company severed the riparian rights from the Mittnacht Tract and did not convey them 32 years later to Rossee in the Rossee Deed. As a result of this faulty conclusion, the Circuit Court then erroneously determined that Rossee did not own the riparian rights appurtenant to Block J. The Circuit Court's ruling ignored the fundamental nature of a reservation of an interest of land. It also ignored the principle that a reservation contained on a plat is to be construed strongly against a grantor.

They continue:

What The Severna Company did not do with the Mittnacht Plat is equally as important as what it did. The Mittnacht Plat did not convey, or otherwise dedicate to the use of any third party, any portion of the riparian rights to the Mittnacht Tract, and did not create any expectation of ownership or use of riparian rights by any third party, including OSPIA, property owners and residents in the Olde Severna Park community. The language of the Note does not lead to the conclusions that the entire waterfront as shown on the Mittnacht Plat and then owned by The Severna Company was being reserved for the community; that The Severna Company was limiting its future ability to convey the riparian rights to others; or that the Note constituted a perpetual denial of the right of individual lot owners to build piers without permission of The Severna Company. Rather, the unambiguous purpose of the Note was to limit The Severna Company's future use of a portion

of its property by granting away to others the right to use in common the streets, alleys, roads, drives or other passage ways or parks as shown on the Plat.

Further, appellants argue:

Considering the Note's primary purpose of granting a right to use in common the streets, alleys, roads, drives or other passage ways or parks as shown on the Plat, the retention of riparian rights was not a blanket perpetual retention of the riparian rights to all land shown on the Plat. Rather, since some of the streets, alleys, roads, drives or other passage ways or parks ran to or abutted the water,[ ] a reasonable and proper construction of the Note is that The Severna Company was expressly retaining the riparian rights associated with all those streets, alleys, roads, drives or other passage ways and parks. This construction would make it clear that the right of use in common to the waterfront park and any streets, roads or ways that had their terminus at the water did not include the right to exercise any rights or incidents of riparian ownership.

In addition, appellants insist:

There was nothing on the 1931 Mittnacht Plat that prevented The Severna Company from conveying its retained riparian rights to Rossee by an all-inclusive conveyance of *all rights* that The Severna Company enjoyed in Block J. If The Severna Company had intended to convey to Rossee less than all of the property and property interests described in the granting and *Habendum* clauses of the Rossee Deed, that Deed would have to have expressly so provided. In fact such a construction of the Deed to include the grant of riparian rights is consistent with The Severna Company's unequivocally expressed intent to convey "all that remains unsold of Plat 2, Severna Park." [ ]

(Underlining in brief) (citation omitted).

Appellants also maintain that the Note on the 1931 Plat was not ambiguous. Therefore, they maintain that the court erred in considering extrinsic evidence, including the 1929 Koethe Deed. Appellants assert:

[W]hen the single paragraph Note is properly construed in its entirety, it is not ambiguous and the Court's consideration of extraneous evidence to interpret it was improper. The proper narrow interpretation of the Note is consistent with the principle that a reservation on a plat is to be strongly construed against the grantor.

Moreover, appellants argue:

Contrary to the finding of the Circuit Court, there is nothing on the 1931 Mittnacht Plat Note or in the 1929 Koethe Deed that in any way suggests that the riparian rights to any portion of the Mittnacht Tract were reserved or intended for future community ownership or use of that The Severna Company's right to convey a portion of those riparian rights to Christian Rossee in 1963 was otherwise limited.

Thus, as of the recording of the Mittnacht Plat in 1931, The Severna Company owned the underlying fee simple interest in the Mittnacht Tract, and owned and controlled all of the riparian rights appurtenant to the ownership of the Mittnacht Tract. The Note on the Mittnacht Plat in no way constrained or prohibited The Severna Company from conveying the Mittnacht Tract, or any portion of the Mittnacht Tract, and its appurtenant riparian rights. The only limitation on the rights of The Severna Company to dispose of land in the Mittnacht Tract is that any such disposition would be subject to the rights of owners and residents of land shown on the Mittnacht Plat to use in common the streets, roads, alleys, drives, ways and parks shown on the Plat.

According to appellants, "the Court failed to recognize that the use of the Note to limit the unequivocal grant of fee simple rights to Rossee created an inconsistency within the Rossee Deed which, by common law precedent, is to be resolved in favor of the unequivocal grant in the Deed's granting clause." They suggest that "the Note did not rebut the presumption that the 1963 conveyance of Block J to Rossee included the riparian rights appurtenant to that land." In appellants' view,

"The grant of fee simple rights prevailed over any reservation in the plat note." And, based on the granting clause and the *habendum* clause, they argue that the intent of the Company clearly "was to convey Block J and its riparian rights to Rossee," given that the "Rossee Deed, on its face, did not contain any language reserving or retaining any riparian rights."

In the alternative, appellants argue that, even if the court "had the right to consider the 1929 Koethe Deed, the Court misapplied that Deed to aid" its interpretation. In their view, the "Koethe Deed dealt with rights of use, not rights of ownership, associated with land to be laid out on the Mittnacht plat."

Appellants acknowledge that "[t]he Koethe Deed did express The Severna Company's intent to provide owners and occupants of lots shown on the first plat of Severna Park with the same rights as owners of lots on the Mittnacht Tract would enjoy to use the community amenities to be established in the future when a plat of the Mittnacht Tract was laid out." Nevertheless, appellants aver that "the Koethe Deed did not attempt to quantify the extent of rights that would be enjoyed by owners and occupants of lots on the Mittnacht Tract or of lots shown on the first plat of Severna Park." Instead, argue appellants, the Koethe Deed "attempted to ensure only that owners and occupants of lots shown on both plats of Severna Park ultimately would have rights of use of amenities provided in both parts of the community."

Further, appellants suggest that, if there is a dispute as to the Company's intent, and interpretation of the Rossee Deed required resolution of conflicting inferences or a determination of the grantor's intent, then the court erred in resolving the case on summary judgment. They assert:

> In light of the ambiguous nature of the extent of The Severna Company's retention of riparian rights as expressed in the Mittnacht Plat Note and in the absence of any "reservation" language in the Rossee deed, no such "clear and unambiguous" conclusion can be drawn that the

presumption of riparian rights has been rebutted when the Mittnacht Plat Note and the Rossee Deed are read together.

Appellees posit: "At issue is the intent of the language in the 1931 Plat, through which the Severna Company retained the riparian rights to the Gunby Property. The language of that Plat controls in interpreting the later deed which incorporated it by reference." They counter that the lower court "correctly concluded that the riparian rights were severed from the Gunby Property in 1931 and never re-united."

According to appellees, the analysis of the 1931 Plat and the chain of title show that "the Severna Company severed and reserved the riparian rights for itself and later transferred those rights—including those for Gunby's waterfront property—to the [Association]." Appellees add:

> The intent of the Severna Company to sever and retain riparian rights rather than transfer them to individual landowners was dramatically and unambiguously expressed in the recorded 1931 Plat when it stated that *"All riparian rights being retained by the said the Severna Company."* With that statement those riparian rights were severed and retained by the Severna Company. (Citation omitted; emphasis in brief).

Moreover, appellees argue: "The intention of the Severna Company to reserve its riparian rights is reflected in the construction of the seminal Rossee Deed in the Gunby chain of title." They posit:

> The Severna Company conveyed to Christian Rossee several Sullivan Cove Properties, including Block J, "[t]ogether with the right to use in common with the seller and others, all of the streets, roads, parks, and avenues as shown on [the 1931 Plat]...." There was no mention of riparian rights in the Rossee Deed. In other words, the Rossee Deed did ***not*** convey expressly the previously severed riparian rights as identified and declared on the 1931 Plat. This omission is particularly revealing because the Rossee deed specifically discusses the waterfront of Block J as a bound-

ary to the real property. The Rossee Deed notes that Block J runs along the Severn River, but then it conspicuously does not include any express grant of "riparian rights," nor does it grant to the "water" or the "river." This omission is deliberate because it was the intent of the Severna Company not to transfer riparian rights.

(Emphasis in brief) (citation omitted).

In addition, appellees assert: "This expressed declaration of intent and inclusion in the 1931 Plat ... dictates the interpretation of any deed incorporating it because it established the intent of the Grantor." They underscore that "intent [is] a key factor in interpreting a deed" and "has been a hallmark of analyzing deeds under Maryland law. In construing a deed, the courts must seek to give effect to the intent of the parties to the deed."

Reiterating that the "Rossee Deed does not contain riparian rights which could be transferred," because none were acquired from the grantor, appellees rely on the 1931 Plat. They maintain that the Rossee Deed is unambiguous and

> contains express and specific reference to the reservation of the riparian rights because it incorporates the 1931 Plat, which declares that all riparian rights are severed and retained by the Severna Company. Furthermore, the Rossee Deed specifically withholds and reserves to the Severna Company all restrictions which apply to the Property, such as the reservation of riparian rights set forth in the 1931 Plat.

Further, appellees explain:

> With no expressed negation of the Severna Company's retained riparian rights appearing in the language of the Rossee Deed, the reference to the 1931 Plat ... is a definitive retention of riparian rights by the Company. It is in this context that the analysis of the 1931 Plat is most instructive in this case. The note in the upper left-hand corner of the 1931 Plat unequivocally states that the subdivided parcels (including the waterfront property of the

Appellants), do not include riparian rights. Those rights were severed and retained by the Severna Company.

Accordingly, appellees contend:

If the Severna Company intended to override the stated intentions of the 1931 Plat, it would have explicitly stated such in the Rossee Deed. Instead, the deed unambiguously states that the land is transferred in accordance with the "rights to use" . . . "as shown on" the 1931 Plat. This is a controlling factor. In other words, the riparian rights remained severed from the real property at the time of the Rossee Deed. Therefore, the Rossee Deed did not convey the riparian rights. As such, each subsequent conveyance of the Gunby waterfront portion of Block J after 1963 (including the 1991 conveyance of the subject property to Gunby) was a conveyance of real property without any riparian rights.

Quoting from *Conrad/Dommel, LLC v. West Development Co.*, 149 Md.App. 239, 271–72, 815 A.2d 828 (2003), appellees also assert: " '[O]nce the [riparian] rights are severed, no subsequent owner of the tract will have riparian rights except if the owner independently acquires riparian rights to unite with the now limited fee in the formerly riparian land.['] " (bold in brief). According to appellees, "any purchaser of the Gunby Property can not obtain the riparian rights from the grantor of the real property because the seller did not and does not possess the riparian rights to sell." They add: "[T]here is no evidence to demonstrate an intent to convey riparian rights in the Gunby Deed."

Appellees also suggest that "Gunby's description of the Rossee Deed does not comport with the recorded deed." They point out that "the deed granted the right to use 'all' of the streets, roads, parks and avenues 'as shown' on the 1931 Plat. There was no explicit reference to use of the waterfront rights and certainly no language indicating that riparian rights were conveyed." In contrast, assert appellees, "there is an explicit reference [in the Rossee Deed] to the 1931 Plat[,]" and the "1931 Plat clearly states that the riparian rights are

reserved by the Severna Company." Thus, they argue: "This reservation conflicts with the Appellants' conclusory interpretation that the deed contains 'an unequivocal grant of all right, title and interests that the Severna Company had in Block J.'" (citation omitted). Appellees continue: "Appellants' argument that the Rossee Deed conveyed any riparian rights to the waterfront property is directly rebutted by the explicit reference in the Rossee Deed to the 1931 Plat (which clearly reserves riparian rights to the Severna Company)."

Further, appellees maintain that the circuit court was entitled to consider extrinsic evidence to "assist in resolving whether the Severna Company intended to convey the riparian rights with the land." They assert:

Several separate deeds from the Company to third-parties reveal that (1) when the Company intended to include riparian rights in a conveyance of a Sullivan Cove Property, the deed clearly stated such an intention, and (2) the Company expressly reserved riparian rights to certain Sullivan Cove Properties unto itself until many years later, at which time the Company conveyed all of its remaining riparian rights to Olde Severna Park Improvement Association, including riparian rights to the Gunby Property.

In particular, appellees point out:

In 1929 the founding Severna Company conveyed to Emma L. Koethe permission to use the new community assets, including the rights and uses of the streets, roads and the land designated as "Public Park" on the Severna Park Plat of 1910, much of which was waterfront. Most significant, the second Koethe Deed at ¶ 3 reads: "it being the purpose and *intention of the said The Severna Company* to give to the owners and occupants of lots in Severna Park *reciprocal rights* in the streets, roads and *waterfront* hereafter to be *laid out on and through a plat* or subdivision of the said 'Mittnacht' tract." (Emphasis added). Clearly, the founding Severna Company officials intended to place waterfront

rights in the hands of the community, not individual property owners.

(Emphasis and italics in brief) (citations omitted).

Appellees also rely on the 1977 Deed between the Company and the County, and the 1991 Deed between the Company and the Association, to support their claim that the Company intended to retain riparian rights to appellants' Property. According to appellees, those deeds "transferred the previously severed riparian rights" by way of "explicit language."

In their reply brief, appellants reiterate that "there is a statutory and common law presumption that the 1963 Rossee Deed conveyed to Christian Rossee riparian rights to the nearly 1,100 feet of waterfront that served as a boundary of the lands conveyed by that Deed." Claiming that appellees "incorrectly assert[ ] that the 1963 Rossee Deed expressly withheld riparian rights from that conveyance," appellants explain:

First, The Severna Company's retention of riparian rights by virtue of the Mittnacht Plat Note did not fall within the scope of this warranty paragraph limitation. The retention of riparian rights was not a "restriction" on the use of land by others, a dedication of land to the use by others, or an easement or way. It was a reservation of certain property rights by The Severna Company.

Second, the granting clause at the outset of the Rossee Deed is the primary indication of The Severna Company's intent as to the rights granted by that Deed. The purported restriction of the scope of the warranty paragraph cannot limit the unequivocal fee simple grant. To the extent that the warranty paragraph purports to limit the granting clause's unequivocal grant of a fee simple interest to Rossee, this warranty paragraph language is inconsistent with and subordinate to the granting clause and, thus, is ineffective.

(Citation omitted.)

## II.

Maryland Rule 2–501 establishes a two-part test for summary judgment: the trial court must decide whether there is

any genuine dispute as to material facts and, if not, whether either party is entitled to judgment as a matter of law. *Johnson v. Mayor & City Council of Balt. City,* 387 Md. 1, 5, 874 A.2d 439 (2005); *Walk v. Hartford Cas. Ins. Co.,* 382 Md. 1, 14, 852 A.2d 98 (2004). A material fact is one that will affect the outcome of the case, depending upon how the factfinder resolves the dispute. *Arroyo v. Bd. of Educ. of Howard County,* 381 Md. 646, 654, 851 A.2d 576 (2004); *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Mandl v. Bailey,* 159 Md.App. 64, 82, 858 A.2d 508 (2004).

The movant has the burden with respect to a summary judgment motion. *See Nerenberg v. RICA of S. Md.,* 131 Md.App. 646, 660, 750 A.2d 655, *cert. denied,* 360 Md. 275, 757 A.2d 810 (2000). To defeat summary judgment, the party opposing the motion must produce evidence demonstrating a genuine dispute of material fact. *Scroggins v. Dahne,* 335 Md. 688, 691, 645 A.2d 1160 (1994); *Berringer v. Steele,* 133 Md.App. 442, 470, 758 A.2d 574 (2000). This means that the nonmoving party must convince the court with facts " 'in detail and with precision.' " *Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc.,* 129 Md.App. 455, 465, 742 A.2d 79 (1999) (citation omitted). Mere general allegations or conclusory assertions will not suffice. *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 738, 625 A.2d 1005 (1993).

The Court of Appeals has cautioned: "The hearing on a motion for summary judgment is not to determine disputed facts but to determine whether there are disputed [material] facts." *Jones v. Mid–Atl. Funding Co.,* 362 Md. 661, 675–76, 766 A.2d 617 (2001). Moreover, all facts and inferences drawn from the facts are resolved in favor of the nonmoving party. *Jurgensen v. New Phoenix Atl. Condo. Council of Unit Owners,* 380 Md. 106, 114, 843 A.2d 865 (2004); *Frederick Rd. Ltd. P'Ship v. Brown & Sturm,* 360 Md. 76, 94, 756 A.2d 963 (2000).

An order granting summary judgment is reviewed *de novo. Myers v. Kayhoe,* 391 Md. 188, 203, 892 A.2d 520 (2006); *Beyer v. Morgan State Univ.,* 369 Md. 335, 359, 800 A.2d 707 (2002). Like the trial court, we must make "the threshold

determination as to whether a genuine dispute of material fact exists." *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18 (2003). If we are satisfied that no genuine issue of material fact was raised or identified in the proceedings below, then we must determine if the trial court reached the correct legal result. *Lippert v. Jung,* 366 Md. 221, 227, 783 A.2d 206 (2001). In other words, we look to whether the court correctly interpreted and applied the relevant law to the uncontested facts. *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001); *Williams v. Mayor & City Council of Balt.,* 359 Md. 101, 114, 753 A.2d 41 (2000).

■ It is well settled that, " '[i]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.' " *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726 (2001) (quoting *PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029 (2001)). Although the granting of summary judgment in a declaratory judgment action is " 'the exception rather than the rule,' " it is sometimes appropriate. *Utica Mut. Ins. Co. v. Miller,* 130 Md.App. 373, 380, 746 A.2d 935, *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000) (citations omitted).

■ In their respective motions, both sides agreed that there were no disputes as to any material facts. Yet, despite the fact that appellants moved for summary judgment, they now suggest that, because the court found the Rossee Deed and 1931 Plat ambiguous, it should have denied appellees' motion "and allowed the case to proceed to trial." They reason that the finding of ambiguity required the court to resolve conflicting inferences and consider extrinsic evidence to ascertain the grantor's intent, which is not appropriate on summary judgment. They state: "[I]f interpretation of the Rossee Deed required resolution of conflicting permissible inferences or reasonable interpretations as to whether the Rossee Deed was intended to convey riparian rights to Rossee, the circuit court erred in deciding the ownership of

riparian rights on summary judgment." Further, appellants assert:

"The determination of a grantor's intent is a question of fact. *Koch v. Strathmeyer,* 357 Md. 193, 742 A.2d 946 (1999). The determinations of questions of intent are not generally matters to be resolved on summary judgment, and summary judgment generally is inappropriate when a matter of intent is at issue. *Okwa v. Harper,* 360 Md. 161, 757 A.2d 118 (2000); *Brown v. Dermer,* 357 Md. 344, 744 A.2d 47 (2000); *DiGrazia v. County Executive,* 288 Md. 437, 418 A.2d 1191 (1980)."

Appellees counter that "Appellants have overstated the proposition [found in *Koch]* and, in so doing, mischaracterize Maryland law." They explain that the Court in *Koch* "was merely determining whether a grantor had intended to establish an implied easement. There was no discussion of whether a court could look to undisputed extrinsic evidence in interpreting a deed upon summary judgment." (citation omitted).

According to the appellees, the court below was

entitled as a matter of law to interpret the Deed. In doing so, it was required to consider the intent of the parties. That evidence, however, is part of the documentary evidence related to the chain of title. None of these documents are disputed by either party. The lower court therefore was entitled to interpret the deed, and, if ambiguous, was entitled to rely upon this undisputed extrinsic evidence as to the grantor's intent.

(Internal citations omitted).

In *MAMSI Life & Health Ins. Co. v. Callaway,* 375 Md. 261, 825 A.2d 995 (2003), the Court reviewed a summary judgment ruling that was rooted in cross motions. The Court said, *id.* at 278–79, 825 A.2d 995:

When both sides file cross-motions for summary judgment, as in the present case, the judge must assess each party's motion on its merits, drawing all reasonable factual inferences against the moving party. *Taylor v. Nations-Bank, N.A.,* 365 Md. 166, 174, 776 A.2d 645, 650 (2001).

Where, as here, the material facts are undisputed, it is for the Court to decide whether the trial court accurately resolved the dispute of law. *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001).

As appellees correctly observe, in *Koch*, 357 Md. 193, 742 A.2d 946, an easement case, "[t]here was no discussion of whether a court could look to undisputed extrinsic evidence in interpreting a deed upon summary judgment." We agree with appellees, who assert:

When interpreting a deed, courts often look to surrounding documentation to aid in understanding a grantors' intent if a provision is ambiguous, even in cases of summary judgment. *See Kobrine, L.L.C., et al v. Metzger*, 380 Md. 620, 846 A.2d 403 (2004) (reviewing award of summary judgment and analyzing various plats, deeds and documents, both within direct chain of title and similar deeds by original subdivision developer in order to determine intent of grantor, in case where lot owner and home owners association claimed that plat legend indicated lot had been retained for beneficial use of all homeowners); *cf. Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358 (1999) (holding that lower court erred in awarding summary judgment based on extrinsic evidence to interpret release provision in mortgage contract where the provision was unambiguous). In *Calomiris*, the Court of Appeals, in reviewing an award of summary judgment, noted that an appellate court reviews *de novo* a trial court's finding of ambiguity, but if it agrees with that finding it next "will apply a clearly erroneous standard to the trial court's assessment of the construction of the contract in light of the parol evidence received." *Id.* at 435, 727 A.2d 358. Nowhere in the court's thorough analysis of when a court is permitted to rely upon extrinsic evidence, did the court state that a court may not consider such evidence when awarding summary judgment.

Here, the court was presented with cross motions for summary judgment. The parties agreed on the underlying facts and recognized, in effect, that the outcome depended on an interpretation of the various documents presented to the

court. Neither side suggested that there was any other evidence for the court to consider in the event of a trial. Therefore, we discern no error in the court's decision to proceed, *as requested* by the parties, by way of summary judgment.

We turn to consider whether the court correctly interpreted and applied the relevant law to the uncontested facts.

## III.

As indicated, the parties disagree about the import of the Note on the 1931 Plat as well as the proper interpretation of various deeds. Therefore, we begin with a review of the legal principles applicable to riparian rights, the construction of deeds, and subdivision plats.

"Generally, a riparian landowner is 'defined as one who owns land bordering upon, bounded by, fronting upon, abutting or adjacent and contiguous to and in contact with a body of water....'" *Kirby v. Hook,* 347 Md. 380, 389, 701 A.2d 397 (1997) (citation omitted); *see Kelly v. Nagle,* 150 Md. 125, 137, 132 A. 587 (1926); *Gregg Neck Yacht Club, Inc. v. County Comm'rs. of Kent County,* 137 Md.App. 732, 764, 769 A.2d 982 (2001); *Gwynn v. Oursler,* 122 Md.App. 493, 497, 712 A.2d 1072, *cert. denied,* 351 Md. 662, 719 A.2d 1262 (1998). As we explained in *Conrad/Dommel,* 149 Md.App. at 268, 815 A.2d 828 (quoting from 1 WATERS AND WATER RIGHTS, § 6 .01(a) at 6–3, 6–4 (Robert E. Beck, ed., 1991, 2001 Repl.Vol.) (footnote omitted) ("WATERS")):

The term "riparian rights" indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it. These rights are significantly different from each other in many respects, and yet they share a common name just as riparian landowners attempt to share the common benefits that arise from adjacency to defined bodies of water. This bundle includes at least the following rights:

(i) of access to the water;

(ii) to build a wharf or pier into the water;

(iii) to use the water without transforming it;

(iv) to consume the water;

(v) to accretions (alluvium); and

(vi) to own the subsoil of nonnavigable streams and other "private" waters.

■ To be sure, access to the water is a primary asset of riparian rights. *See Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 326, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973) ("the quality of being riparian, especially to navigable water, may be the land's most valuable feature"); *Steinem v. Romney*, 233 Md. 16, 23, 194 A.2d 774 (1963); *Waring v. Stinchcomb*, 141 Md. 569, 582, 119 A. 336 (1922). Appellees insist, however, that "[a]ccess is not the issue" here. They assert that "the record shows that the riparian rights were reserved to prevent construction of private piers and other improvements degrading the shoreline. As such, community access to the privately owned Gunby waterfront shoreline is not needed to utilize the riparian right."

Maryland Code (1982, 2005 Supp.), § 16–103 of the Environment Article ("E.A."), is also pertinent. It provides that a "riparian owner may not be deprived of any right, privilege, or enjoyment of riparian ownership . . . ." Further, E.A. § 16–201 states: "A person who is the owner of land bounding on navigable water is entitled to any natural accretion to the person's land . . . . After an improvement has been constructed, the improvement is the property of the owner of the land to which the improvement is attached."

■ As we shall soon discuss, when a deed expressly grants riparian rights, "the language of the deed controls." *Gwynn*, 122 Md.App. at 500, 712 A.2d 1072. But, the absence of an express grant in a deed does not necessarily foreclose the transfer of riparian rights. Of import here, "a conveyance of land bordering on navigable water presumptively carries with it the grantor's riparian rights." *Williams v. Skyline Development Corp.*, 265 Md. 130, 162, 288 A.2d 333 (1972); *see Conrad*, 149 Md.App. at 270, 276, 815 A.2d 828.

■ In *Conrad,* 149 Md.App. at 277, 815 A.2d 828, Judge Kenney said for the Court: "Absent an express reservation, it is presumed as a matter of law that the riparian rights [are] conveyed in the deeds of trust." Indeed, in the context of a commercial transaction, the Court commented that "it is inconceivable" that a commercial lender of a waterfront development "would not expect the applicable riparian rights associated with the property securing the loan to be part of its security." *Id.,* n. 19. We explained, *id.* at 270, 815 A.2d 828:

> "Courts presume a deed to riparian land carries riparian rights with the land unless the rights had been severed from the land before the conveyance or there is language in the deed to reserve those rights." WATERS, § 7.04(a)(1) at 7–92 (footnote omitted).

> In most of the states in which the question has arisen, the owner of land bordering on the water has been regarded as entitled to sever the right of reclamation and wharfing out from the land to which it originally appertained, so as to vest it in a person having no interest in such land. This he may do either by a transfer of the land retaining the right, or by a transfer of the right retaining the land.

*Tiffany,* at § 667 at 723.

■ Of significance here, the presumption may be rebutted by an express reservation in a deed. *Williams,* 265 Md. at 162, 288 A.2d 333; *Conrad,* 149 Md.App. at 276, 815 A.2d 828. As *Tiffany* observed, riparian rights may be separated from the ownership of the land to which they are appurtenant, either by grant of such rights to another in a deed, or by a reservation of rights to the grantor as part of the conveyance of the land. *Williams,* 265 Md. at 160–61, 288 A.2d 333. As the *Conrad* Court explained: "In regard to riparian rights '[o]nce the [riparian] rights are severed, no subsequent owner of the tract will have riparian rights except if the owner independently acquires riparian rights to unite with the now limited fee in the formerly riparian land.' " *Conrad/Dommel,* 149 Md.App. at 271–72, 815 A.2d 828 (cita-

tion omitted). As we have seen, appellees argue that the Note on the 1931 Plat was incorporated into the Rossee Deed and constituted a reservation that severed riparian rights.

Thus, the principles that govern construction of the Rossee Deed and the 1931 Plat are important to this case.

In construing the language of a deed, the basic principles of contract interpretation apply. *Miller v. Kirkpatrick,* 377 Md. 335, 351, 833 A.2d 536 (2003); *see Brown v. Whitefield,* 225 Md. 220, 225, 169 A.2d 920 (1961); *Buckler v. Davis Sand & Gravel Corp.,* 221 Md. 532, 537, 158 A.2d 319 (1960); *Gregg Neck Yacht Club, Inc.,* 137 Md.App. at 759, 769 A.2d 982. "These principles require consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.'" *Chevy Chase Land Co. v. U.S.,* 355 Md. 110, 123, 733 A.2d 1055 (1999) (citations omitted). Ordinarily, the construction of a deed is a question of law for the court, and is subject to *de novo* review. *Calvert Joint Venture # 140 v. Snider,* 373 Md. 18, 38, 816 A.2d 854 (2003); *Chevy Chase Land Co.,* 355 Md. at 123, 733 A.2d 1055; *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 341, 731 A.2d 441 (1999); *Calomiris v. Woods,* 353 Md. 425, 434, 727 A.2d 358 (1999).

Under the principles of contract interpretation, the court gives effect to the intention of the parties, gleaned from the text of the entire instrument, unless that would violate a principle of law. *Calvert Joint Venture # 140,* 373 Md. at 38, 816 A.2d 854; *Chevy Chase,* 355 Md. at 123, 733 A.2d 1055; *Gregg Neck Yacht Club, Inc.,* 137 Md.App. at 759, 769 A.2d 982; *Gwynn,* 122 Md.App. at 500, 712 A.2d 1072. The intention of the grantor is a question of fact, and "the surrounding circumstances ... must be analyzed in order to truly understand an unexpressed intention." *Koch,* 357 Md. at 198, 742 A.2d 946. As we reiterated in *Goss v. C.A.N. Wildlife Trust, Inc.,* 157 Md.App. 447, 459, 852 A.2d 996 (2004): "The 'true test' of what was meant by the language of the deed is 'what a reasonable person in the position of the parties would

have thought it meant.'" (Citing *Chesapeake Isle, Inc. v. Rolling Hills Dev. Co.,* 248 Md. 449, 453, 237 A.2d 1 (1968)).

▮▮▮▮▮ We construe a deed without resort to extrinsic evidence, if the deed is not ambiguous. In "interpreting a deed whose language is clear and unambiguous on its face, the plain meaning of the words used shall govern without the assistance of extrinsic evidence." *Drolsum v. Horne,* 114 Md.App. 704, 709, 691 A.2d 742, *cert. denied,* 346 Md. 239, 695 A.2d 1227 (1997). We also consider the language of the deed "in light of the facts and circumstances of the transaction at issue as well as the governing law at the time of conveyance." *Chevy Chase,* 355 Md. at 123, 733 A.2d 1055.

> Thus, the intention of a grantor is to be determined from the four corners of his deed, if possible, and if from an attempt to make such determination an irreconcilable conflict arises because of contradictions within the deed other means must be employed to ascertain the correct interpretation to be placed upon it. Words used in a deed should be construed in pari materia and a construction should be adopted which will give effect to all words. Each word and provision of the instrument should be given that significance which is consistent with, and will effectuate, the intention of the parties.

4 HERBERT T. TIFFANY, THE LAW OF REAL PROPERTY § 981 at 112 (3d ed.1975, 2007 Cum.Supp.).

▮▮▮▮▮ Language in a deed is considered ambiguous, however, "if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Calomiris,* 353 Md. at 436, 727 A.2d 358; *see Gregg Neck Yacht Club, Inc.,* 137 Md.App. at 760, 769 A.2d 982. The determination of ambiguity is a question of law, subject to *de novo* review. *See Ashton,* 354 Md. at 341, 731 A.2d 441; *Calomiris,* 353 Md. at 434, 727 A.2d 358. And, when the words in a deed " 'are susceptible of more than one construction,' " the deed is " 'construed against the grantor and in favor of the grantee....' " *Morrison v. Brashear,* 38 Md.App. 693, 698, 382 A.2d 353 (1978) (citation

omitted); *see Gregg Neck Yacht Club, Inc.,* 137 Md.App. at 760, 769 A.2d 982.

 Of import here, in order to rebut the presumption discussed above, which favors the transfer of riparian rights, a reservation in a deed must be express, definite, and clear. *Conrad,* 149 Md.App. at 276–77, 815 A.2d 828 (quoting 9 THOMPSON ON REAL PROPERTY, SECOND THOMAS EDITION, at § 89.09(c)(2), at 597–98 (1999) (footnotes omitted)). Moreover, reservations are narrowly construed. *Id.*

Maryland Code (1974, 1996 Repl.Vol., 2000 Supp.), § 2–101 of the Real Property Article is also relevant to our analysis.

**§ 2–101. "Grant" or "bargain and sell" construed to pass whole interest.**

The word "grant", the phrase "bargain and sell", in a deed, or any other words purporting to transfer the whole estate of the grantor, passes to the grantee the whole interest and estate of the grantor in the land mentioned in the deed unless a limitation or reservation shows, by implication or otherwise, a different intent.

Finally, with reference to the 1931 Plat, we look to *Koch,* 357 Md. at 199, 742 A.2d 946. There, the Court said: "[W]hen a property owner subdivides property and makes or adopts a plat designating lots as bordering streets, and then sells any of those lots with reference to the plat, an implied easement of way 'passes from the grantor to the grantee ... over the street contiguous to the property sold.'" (citation omitted). Similarly, in *Boucher v. Boyer,* 301 Md. 679, 689, 484 A.2d 630 (1984), the Court stated: "[A] deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction." *Cf.* James H. Backman & David A. Thomas, A PRACTICAL GUIDE TO DISPUTES BETWEEN ADJOINING LANDOWNERS—EASEMENTS § 2.02[3] (Matthew Bender & Co. ed.2002) (stating that "courts ... characterize implied easements according to the three patterns in which they arise. The first pattern is designated as easements implied from prior use. The second

pattern is designated as easements by necessity, *and the third as easements implied from a plat in a subdivision.*") (Emphasis added).

As noted, the court below considered the language found in the 1931 Plat, the Rossee Deed, and the 1929 Deed to Emma Koethe.[16] For convenience, we restate these provisions:

The 1929 Koethe Deed said, in the third paragraph:

[It is] the purpose and intention of the Severna Company to give to the owners and occupants of lots in Severna Park *reciprocal rights in the streets, roads and, waterfront hereafter to be laid out on and through plat or subdivision of the "Mittnacht" tract.*

(Emphasis added.)

The handwritten Note on the 1931 Plat stated:

It is the intention of the Severna Company not to dedicate to the public, the streets, alleys, roads, drives, and other passage ways and parks shown on this plat, except that the same may be used in common by lot owners and residents of Severna Park Plat 2. **All riparian rights being retained by the said the Severna Company.**

(Emphasis added.)

As the circuit court noted, paragraph eight of the Rossee Deed referred to the Plat; it stated that the property is conveyed:

Together with the right to use in common with the seller and others, all of the streets, roads, parks and, avenues shown on plat # 2, Severna Park, Jacob Mittnacht Tract, surveyed by J. Revell Carr, April, 1931, . . . as well as all privileges, appurtenances, and advantages to the same belonging or any wise appertaining[.]

The circuit court then commented:

---

16. Although we do not consider the Note on the 1931 Plat to be ambiguous, we need not take issue with the court's consideration of extrinsic evidence.

This clearly shows the grantor's intent that the plat would make the waterfront rights reciprocal to all of the owners of lots in the platted lots. This eliminates any ambiguity and makes clear that the riparian rights referenced in the 1931 plat, related to the entire platted property and not just to those which would be street ends or adjoining parks.

In our view, the court misconstrued the provisions in dispute and improperly expanded the reservation. We explain.

By way of analogy, *Williams Realty Co., Inc. v. Robey*, 175 Md. 532, 2 A.2d 683 (1938), an easement case, provides guidance. In *Williams*, the appellees were owners of a lot in a residential development known as Selby–on–the–Bay. They claimed that they had an implied easement over an area of land that fronted on the water. Appellees sued to enjoin the developer from dividing that land into lots for sale or from renting the land for a public resort. *Id.* at 534, 2 A.2d 683.

When developing the subdivision, the appellant had prepared two plats, the first of which was unrecorded. The first plat designated the land as a "Community Beach and Park." *Id.* at 535, 2 A.2d 683. The second plat, which was recorded, depicted the "same open, unplatted, space shown, but with no words designating its use." *Id.* at 536, 2 A.2d 683. Further, the words " 'Community Beach and Park' " had been omitted. *Id.* Nevertheless, there was evidence "of continued selling upon a showing of the first plat, and assurances of a private, community, beach." *Id.* The deeds "described the lots with reference to the . . . 'Community Beach.' " *Id.* In purchasing their property, the evidence indicated that the appellees relied on the unrecorded plat provided by the sales agent, as well as representations of the sales agent. *Id.* at 535, 2 A.2d 683. According to the appellees, "they were given explicit verbal assurances that the 'Community Beach and Park' would be kept open as a provision for the lot owners of the community. . . .' " *Id.* Moreover, their deed, in describing the lot, expressly referred to " 'Community Beach.' " *Id.*

The Court of Appeals affirmed the trial court's determination that the appellees enjoyed an easement as to the recre-

ational land. It concluded that the record contained "a preponderance of testimony to prove that the complainants were induced to buy their lot upon assurances in the first plat, and verbally, confirmed by the reference in their deed to the 'Community Beach,' ... that they were securing rights to the enjoyment of the open space from the road to the water, in conjunction with other lot owners and such persons as they might invite." *Id.* at 536, 2 A.2d 683.

*Klein v. Dove*, 205 Md. 285, 107 A.2d 82 (1954), is also instructive by way of analogy. There, the plaintiffs/appellees were owners of the interior lots of a waterfront subdivision. *Id.* at 287, 107 A.2d 82. They sought an injunction to bar the defendants/appellants from blocking their use of a ten foot strip of land, situated between appellants' lot and another lot of the subdivision, and used by the appellees to obtain access to the subdivision's waterfront. *Id.* at 288, 107 A.2d 82. The trial court found that the appellees were entitled to a right of way as to the land. *Id.*

In reviewing the trial court's decision, the Court of Appeals looked to the plat, but noted that it was "scantily marked"; it failed to designate areas of land that were "evidently streets, roads or ways...." *Id.* at 291, 107 A.2d 82. Nevertheless, the Court held that "[a] n examination of the plat shows that they could not sensibly be regarded as anything else...." *Id.* In reaching this conclusion, the Court observed that the plat contained "Notes" that conclusively indicated that undenoted roads were clearly roads. Moreover, the Court was satisfied that "there [was] no readily perceptible reason for the ten-foot right of way between what appears to be the main road of the development and the lake area except to give the owners or occupants of interior lots on this waterfront development access to boating, bathing, swimming and fishing." *Id.*

In *Steuart Transp. Co. v. Ashe*, 269 Md. 74, 75, 304 A.2d 788 (1973), the circuit court enjoined Steuart Transportation Company from docking oil barges at a pier in front of a residential community. It determined that the subdivision plat, along with the documents imposing restrictive covenants, indicated

the developer's intent to reserve the area for the recreational and non-commercial use of the residents. *Id.* at 76, 89–91, 304 A.2d 788. In reaching its decision, the circuit court found that the restrictive covenants for one section of the subdivision were intended to apply to the other. *Id.* at 89, 304 A.2d 788. Moreover, the restrictive covenants mentioned that the home-owners would be bound by the covenants if they took their land with notice of them. *Id.* The first deed after the creation of the restrictive covenants cited the recorded plat, incorporating by reference the general intent of the developer to bind each lot owner to the covenants. *Id.* at 89–90, 304 A.2d 788.

The Court of Appeals reviewed the history of the law of implied easements with respect to common areas in planned communities and affirmed. It was of the view that the evidence supported the circuit court's findings of fact with respect to the developer's intention to create an easement. Moreover, it agreed that the company's use of the land violated the implied easement for recreational use that burdened the waterfront lots, established by two separate documents recorded just after the subdivision was created. *Id.* at 74–82, 304 A.2d 788.

Notably, the Court emphasized that intention is a question of fact. It said: "[T]he intention to establish a uniform scheme or plan of development with restrictions is a matter of intention of the parties. This intention may be 'indicated in many ways' and the 'whole question becomes a question of fact to be determined from all the circumstances in the case.' " *Id.* at 89, 304 A.2d 788 (citation omitted). Upholding the circuit court, the Court stated, *id.* (quoting *McKenrick v. Savings Bank of Baltimore,* 174 Md. 118, 128, 197 A. 580 (1938)):

"[I]f in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity; that covenants creating restrictions are to be construed strictly in favor of the freedom of the land, and against the person in whose favor they are made; and that the burden is upon one seeking to enforce such restric-

tions, where they are not specifically expressed in a deed, to show by clear and satisfactory proof that the common grantor intended that they should affect the land retained as a part of a uniform general scheme of development."

*County Comm'rs of Charles County v. St. Charles Assocs. Ltd. P'ship,* 366 Md. 426, 784 A.2d 545 (2001), is also helpful to our analysis. There, the Interstate General Company, predecessor in title to the St. Charles Association ("SCA"), and the United States Department of Housing and Urban Development, created a subdivision called St. Charles Communities. *Id.* at 432, 784 A.2d 545. The Charles County Commissioners and the developers disagreed about how many residential lots in the subdivision would need waste water treatment from the Mattawoman waste water treatment plant. *Id.* at 434–36, 784 A.2d 545. The parties reached a settlement that said: " 'It is the further intent of the parties hereto, to provide certainty to SCA and the County regarding the number of residential units to receive water and sewer allocations each year. . . .' " *Id.* at 436, 784 A.2d 545. The settlement agreement expressly stated that the parties intended the agreement to run with the land. *Id.* Nevertheless, a dispute erupted about the municipal waste water treatment plant after deeds referencing the agreement were granted to new residential lot owners. *Id.* at 435, 784 A.2d 545.

The Court of Appeals determined that the parties intended the covenants to run with the land, and it recognized that a court will effectuate that intent as to all purchasers with constructive notice of the restrictions. Thus, it held that the settlement agreement created binding covenants that ran with the land, so as to restrict the rights of any homeowners who purchased their property after the agreement. The Court ruled, *id.* at 443, 784 A.2d 545:

[W]e hold that the deeds conveying the real property at issue here, while lacking express reference to the 1989 Agreement, were valid grants and assignments and by their terms encompassed any rights and obligations running with the land burdening or benefitting the parties as laid out in the recital or provisions of the 1989 Agreement recorded

among the Land Records of Charles County. We arrive at the holding by construing the deeds in their entirety and the facts, circumstances, and intentions of the parties related to these conveyances, despite the fact that the initial deeds may make no express subject matter reference to the 1989 Agreement itself.

*Kobrine v. Metzger*, 380 Md. 620, 846 A.2d 403 (2004), is also relevant. There, a lot in a subdivision was reserved on a recorded plat for the use of all the owners of the subdivision (the "Reserved Lot"). *Id.* at 623, 846 A.2d 403. The disputed property bordered the Patuxent River, and was used by the lot owners for access to the river, "for picnics, parties and other recreational uses." *Id.* The Kobrines, who created Kobrine LLC ("KLLC"), the petitioner, purchased a lot in the subdivision in 1991, which also bordered the Patuxent River and was located directly west of the Reserved Lot. Metzger owned a non-riparian lot in the subdivision, purchased in 1998, and originally had access to the Reserved Lot via an interior road. *Id.* Through KLLC, the Kobrines purchased the Reserved Lot in 1999.

The deed to KLLC conveyed the Reserved Lot in fee simple, " 'subject to covenants and restrictions of record[.]' " *Id.* at 629, 846 A.2d 403. Within a month, the Kobrines precluded the respondent and other lot owners from using the Reserved Lot, by erecting a stone revetment along the shoreline to protect the lot from erosion, which made access to the water difficult, and by placing "no trespassing" signs on the Reserved Lot. *Id.* at 623, 629, 846 A.2d 403. In response, Metzger, and a homeowner's association created by him, sued to invalidate KLLC's title. *Id.* at 623, 846 A.2d 403. No other lot owner in the subdivision sought to upset or impair KLLC's title, however. *Id.*

A "Declaration of Covenants, Restrictions, and Conditions" ("the Declaration"), recorded in 1972, referenced, *inter alia,* the "roadways and reserved areas" of the subdivision, including the Reserved Lot. *Id.* at 625–26, 846 A.2d 403. In pertinent part, the Declaration stated, *id.* at 626, 846 A.2d 403:

"DEVELOPER, present owner of the remaining 56 lots of [the subdivision], desires to set up a sound basis for maintenance of the roadways and reserved areas of [the subdivision]. *To this end, LOT OWNERS, their heirs and assigns of the said remaining 56 lots, will pay a 1/56th share per lot of said maintenance cost until such time as all 56 remaining lots are sold, at which time the said LOT OWNERS, their heirs and assigns, will accept a 1/56th fee simple interest per lot in said roadways and reserved areas, thereby relieving DEVELOPER of all liabilities relative to said roadways and beach areas.*"

(Emphasis added in *Kobrine* ).

The final part of the Declaration provided for the creation of a community association for the subdivision. Of relevance here, the Declaration provided, *id.* at 626–27, 846 A.2d 403:

"... DEVELOPER, or its agent, as agent for said LOT OWNERS, is authorized to cause a community protective corporation or association to be organized *for the purpose of assuring the perpetuation of [the subdivision] as a desirable community and the safeguarding [of] the investment of all LOT OWNERS.* The management of said organization shall be governed by its members."

(Emphasis omitted; emphasis added).

In their action, Metzger and the homeowner's association sought a declaration that (1) they and the other lot owners of the subdivision "have an easement" in the Reserved Lot for all lawful recreational purposes; Kobrine LLC holds title to the lot in constructive trust for such recreational use; if the plaintiffs and other lot owners do not have an easement by virtue of the recorded plat of the subdivision, they have a recreational easement by prescription; and (2) the homeowners' association is the representative of the subdivision lot owners, and the petitioner holds title to the Reserved Lot in trust for the lot owners and must convey title either to the homeowners' association or, in 1/56th interests, to the 56 lot owners directly. *Id.* at 630, 846 A.2d 403.

The circuit court concluded that the lot owners had a limited express and implied recreational easement in the Reserved Lot and were entitled to title to the lot. *Id.* We affirmed, holding, *inter alia,* that the lot owners had an implied easement under the general plan of development of the subdivision. *Id.* at 631, 846 A.2d 403. The Court of Appeals granted *certiorari* to review the determination that the lot owners had a right both to title of and a recreational use easement in the Reserved Lot. *Id.* at 632, 846 A.2d 403.

The *Kobrine* Court ruled that both the circuit court and this Court erred in concluding that the Declaration granted to the lot owners a 1/56th fee simple interest in the Reserved Lot. It held: "There is nothing in that provision that requires the developer to convey title to the . . . reserved areas to the lot owners[.]" *Id.* at 633, 846 A.2d 403. The Court agreed, however, that the lot owners maintained "a limited implied easement" in the Reserved Lot. *Id.* at 635, 846 A.2d 403. In determining that the lot owners had a "limited implied" easement to *use* the Reserved Lot, the *Kobrine* Court recognized that a "more expansive rule [regarding the creation of implied easements] has been applied with respect to waterfront subdivisions." *Id.* at 639, 846 A.2d 403

The Court reaffirmed its holding in *Williams Realty Co., Inc. v. Robey,* 175 Md. 532, 2 A.2d 683 (1938), discussed *supra,* stating: " 'The relation of lots in a water front settlement to the water differs from that of abutting lots to a city square' in that *access to the water is the essential purpose of the subdivision and the purchase of lots in it."* *Id.* at 640, 846 A.2d 403 (quoting *Robey,* 175 Md. at 539, 2 A.2d 683) (alteration in *Kobrine;* emphasis added). Consequently, the *Kobrine* Court reasoned that the lot owners of the subdivision were "intended to be benefitted *by the use of"* the Reserved Lot. *Id.* at 641, 846 A.2d 403.

The *Kobrine* Court determined that the lot owners had no *title* to the Reserved Lot, because nothing in the Declaration gave them title. Moreover, the *Kobrine* Court did not invalidate KLLC's *title* to the Reserved Lot. Rather, the Court

directed the circuit court to enter a judgment in accordance with its recognition of an implied recreational easement to use the Reserved Lot.

*Williams,* 265 Md. 130, 288 A.2d 333, is also instructive. There, the Court considered whether the exclusive right to make improvements into the water was a severable right. The appellants were owners of waterfront condominium units in Ocean City, who sought to enjoin the developer/appellees from performing certain landfilling operations in the future and to require the developers to restore a water area by removing existing pilings and bulkheads adjacent to the condominiums.

The appellees argued that they "legally sever[ed] the riparian rights involved in the suit, reserving those rights to themselves, so as to allow them to fill in the bed of the Bay after the waterfront land had been conveyed away. . . ." *Id.* at 132, 288 A.2d 333. In support of this argument, they cited a deed in the chain of title to the property that referred to a recorded plat as evidence of their intent to retain the riparian rights. *Id.* at 140–41, 288 A.2d 333.

The deed contained the following provision, *id.* at 140, 288 A.2d 333:

"PROVIDED, HOWEVER, that the grantee herein, his heirs and assigns, shall have no right to extend said lots beyond their present lines, as shown on the aforesaid plat, by causing, in any manner whatsoever, artificial accretion thereto; the grantor herein hereby expressly reserving unto itself, its successors and assigns, all lands, as shown on the aforesaid plat, adjacent to said lots which lie beneath the waters of Isle of Wight Bay; . . . ."

The Court held that, because the developers had specifically retained ownership of the riparian rights appurtenant to the condominium property, they had properly severed the right to make improvements into the water. The Court stated, *id.* at 154–56, 288 A.2d 333:

The appellants earnestly contend that under the provisions of Code (1957) Art. 54, §§ 45 and 46, . . . the riparian

right of the owner of land to make improvements in naviga-
ble waters in front of his land being an exclusive right may
not legally be severed from the land and hence the provision
and reservation in the Boinis Deed by Skyline was null and
void. We do not agree with this contention.

\* \* \*

We have never had occasion heretofore to hold that the
riparian rights to wharf out, erect bulkheads and fill in front
of land may lawfully and effectively be severed from the
land by grant or reservation. We now hold that they may
be so severed.

(Emphasis omitted).

Notably, the Court construed the applicable deed together
with the recorded plat, because the deed conveyed the lots by
reference to the recorded plat. The Court opined: "In the
event of ambiguity in the terms of the deed in regard to a
description of a right of way, its location, as shown on the plat
will prevail." *Id.* at 161, 288 A.2d 333 (citation omitted).
Further, the Court said, *id.* at 162, 288 A.2d 333:

Although a conveyance of land bordering on navigable
water presumptively carries with it the grantor's riparian
rights, including the right to erect bulkheads, to fill and to
wharf out, this presumption may be rebutted. 2 Tiffany,
*The Law of Real Property,* § 667, pp. 723, 724 (3rd ed.1939).
*See Owen v. Hubbard,* 260 Md. 146, 151–152, 271 A.2d 672,
676 (1970). In the present case, the Boinis Deed and plat
have successfully rebutted that presumption.

We are also guided by *Gwynn v. Oursler, supra,* 122
Md.App. 493, 712 A.2d 1072, which involved a dispute concern-
ing the scope of an easement, riparian rights, and the right to
build a dock. We considered whether a right-of-way extend-
ing to a body of water included, by implication, riparian rights
as well as the right to erect a pier.

Two families owned adjoining parcels of waterfront proper-
ty. They quarreled over whether the appellants had "a ripari-
an right-of-way ... across the land of appellees," *id.* at 495,

712 A.2d 1072, which "was intended to give them access to a dock" on the Patuxent River. *Id.* at 497, 712 A.2d 1072. The deed was silent as to piers, nor did it mention riparian rights. However, it provided that the right of way was "for ingress and egress only[.]' " *Id.* at 496, 712 A.2d 1072. At the time of the deed, a pier was located at the end of the right-of-way. After it was destroyed by hurricane, it was rebuilt at another location, and was no longer situated at the end of the right-of-way.

The Court concluded that an easement across two waterfront parcels does not, as a matter of law, include riparian rights that entitled the appellants to construct, use, and maintain a pier at its end. *Thus, we agreed with the trial court that a "right-of-way to the shore of a navigable river does not, by implication, create riparian rights."* *Id.* at 495, 712 A.2d 1072 (emphasis added). Relying on decisions from other jurisdictions, we also said that, generally, a deed granting a "right-of-way to a body of water, alone, does not entitle the grantee [to] the right to construct a dock or a pier." *Id.* at 500, 712 A.2d 1072.

The Court emphasized the importance of ascertaining the grantor's intent, based on the language used for the conveyance:

> [O]nce a court is faced with a deed granting a right-of-way to a body of water, the court must undertake a two-part analysis to determine whether the grantor intended to allow the grantee the right to construct a pier or dock. First, the court must examine the deed alone to determine whether, on its face, it grants or denies the riparian rights. If the deed itself contains an express grant or denial of that intent, the language of the deed controls. If, however, the deed is ambiguous as to the intent of the grantor, the court must undertake the second part of the analysis and may consider parol or other extrinsic evidence to discover the grantor's intent.

*Id.* (internal citations omitted).

With these lessons in mind, we return to the case *sub judice.*

 The 1931 Plat was intended for subdivision and development of the property depicted on the plat. It delineates roads and streets leading to the water. The Note on the 1931 Plat clearly conferred on prospective lot owners the right to use the roads, alleys, streets, and parks. In our view, it also expressly retained for the Severna Company the riparian rights attached to any such roads, alleys, streets, and parks, but did not constitute a general reservation of all riparian rights.

 As we have seen, the reservation on the 1931 Plat must be narrowly construed. The one-sentence reservation follows text that expressly permits all lot owners in the development to use the streets, etc., in the subdivision, without dedicating them to the public; some of those roads lead to or abut the Severn River. Looking to *Gwynn* as an example, we are satisfied that the developer merely stated expressly what this Court found by implication in *Gwynn,* 122 Md.App. at 495, 712 A.2d 1072: "[A] right-of-way to the shore of a navigable river does not, by implication, create riparian rights."

 Through the Rossee Deed, executed in 1963, Rossee acquired fee simple ownership of a waterfront lot. Appellees attach significance to the fact that the Rossee Deed specifically conferred the right to use the streets delineated on the 1931 Plat, but failed to mention the grant of any riparian rights. Although the Rossee Deed was silent as to the transfer of riparian rights, it repeatedly referred to the water. In any event, the omission highlighted by appellees is not dispositive, because riparian rights are presumptively appurtenant to a fee simple conveyance, in the absence of an express exclusion, and no such exclusion is contained in the Rossee Deed.[17]

The mere reference in the Rossee Deed to the 1931 Plat simply was not sufficient to rebut the presumption in favor of the transfer of riparian rights to Rossee. The Note reflects

---

17. As noted, R.P. § 2–101 creates a rebuttable presumption that the Company conveyed its entire estate to Rossee, including riparian rights, in the absence of an express reservation.

the grantor's express intent to convey to lot owners in the subdivision a right to use the roads in the development that abut the water, without conveying any rights to exercise the privileges of riparian ownership with respect to those roads. Consistent with the Note on the 1931 Plat, the Rossee Deed expressly granted use-in-common rights with regard to the streets shown on the subdivision plat, because those rights extend beyond Block J; in contrast to riparian rights, they were not rights otherwise arising from fee simple ownership of Block J.

Appellees' reliance on the 1929 Koethe Deed to support their claim that the Severna Company intended to place waterfront rights in the hands of the community, rather than with individual lot owners, is equally unavailing. The "to be laid out" language in that deed was obviously prospective. No one has suggested that such language was sufficient to effect a grant of riparian rights to the entire community. Indeed, appellees rely on the 1931 Plat for the opposite proposition; they urge that the 1931 Plat disavowed a grant to the community because, in the Note, the developer reserved all riparian rights to itself. Subsequent to the 1931 Plat, but before the Rossee Deed was executed, the developer never conveyed riparian rights to the community. And, as we have seen, such rights presumptively passed to Rossee pursuant to the Rossee Deed of 1963. Because riparian rights were conveyed to Rossee in 1963, the 1977 Deed, purporting to convey riparian rights to OSPIA, was ineffective; the developer could not convey that which had already been conveyed to Rossee.

In sum, we conclude that the Note on the 1931 Plat did not retain riparian rights in the developer with respect to the waterfront lot purchased by Rossee or his successors. To accomplish that objective with respect to a waterfront community, more would have been required than the one sentence we have here. As the Court recognized in *Koch*, 357 Md. at 203, 742 A.2d 946, "there is a unique relationship between a waterfront development and the water, because '[t]here is

naturally a ... dependence, if indeed we should not say that access to the water is an essential, for in that access lies the purpose of the settlement and the purchase of lots in it.'" (Citation omitted). Extrapolating from that proposition, one who buys waterfront property in a development usually expects to acquire riparian rights, unless those rights are clearly and expressly excluded.

In order to obtain a wetlands license in Maryland to construct a pier or bridge the applicant must be a person with "a riparian interest in private tidal wetlands or upland adjacent to State tidal wetlands, or an agent designated by the person with riparian interest ..." Code of Maryland Regulations ("COMAR") 26.24.02.02A (1). This requirement codifies the common law principle that only "[t]hose who have riparian rights may make such structures as wharves, piers, and landings that are connected to the waterfront and built out into the water." *Gwynn,* 122 Md.App. at 497–98, 712 A.2d 1072 (citation omitted). Because the circuit court incorrectly determined that appellants did not possess riparian rights, it erred in concluding that the License was improperly issued on that basis.

In light of its disposition, the circuit court did not resolve appellees' statutory and regulatory challenges to the issuance of the License. Those matters have not yet been adjudicated. Therefore, we shall vacate the court's judgment and remand for further proceedings to consider appellees' other challenges to the License.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED IN APPEAL NO. 1180; THAT CASE IS REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IN APPEAL NO. 1248 IS REVERSED; THAT CASE IS REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR

ENTRY OF A DECLARATORY JUDGMENT CONSIS-
TENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.